2012 UT 45

Alan **REIGHARD**, an individual;  Suzy **Reighard**, an individual;  Aidan **Reighard**, a minor, by and through his general guardian, Suzy Reighard, Plaintiffs and Appellees,

v.

Steven **YATES**, an individual;  and Does 1 through 10, inclusive, Defendant and Appellant.

No. 20100661.

Supreme Court of Utah.

July 27, 2012.

Rehearing Denied Sept. 18, 2012.

---

Daniel S. Drage, Ogden, Christine E. Drage, Trevor O. Resurreccion, CA, for appellee.

Kathy A.F. Davis, Lincoln W. Hobbs, Julie Ladle, Salt Lake City, for appellant.

Associate Chief Justice NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 The dispute in this case stems from the purchase of a house built in Park City, Utah. Mr. Yates built the house and lived in it for approximately two years. The Reighards then purchased the house from him. After living in the house for over two years, the Reighards discovered mold in some of the windows and walls and sued Mr. Yates.

¶ 2 The jury found in favor of the Reighards on their negligence claim but found in favor of Mr. Yates on the Reighards' negligent misrepresentation claim. The jury also found that the Reighards failed to perform all, or substantially all, of the things the contract required them to do and therefore the jury, as instructed, did not reach the question of whether Mr. Yates breached the contract. The Reighards and Mr. Yates both appeal the decisions of the trial court.

¶ 3 We hold that the economic loss rule prevents recovery of economic damages within the scope of the parties' contract but allows for recovery of damages to other property or for bodily injury. We also hold that the trial court did not err when it permitted Eugene Cole, Ph.D., to testify as an expert witness. Because Mr. Yates prevailed in his claims under the contract, which provided the only basis for awarding attorney fees, he is entitled to recover attorney fees for the breach of contract suit. We hold that the trial court did not err when it denied the Reighards' motion for judgment notwithstanding the verdict. We remand the case for further proceedings consistent with our decision.

## BACKGROUND

¶ 4 Mr. Yates constructed the house at issue. He served as general contractor and resided in the house from November 2001 until approximately March 2004. The Reighards purchased the house from Mr. Yates in early 2004. The parties entered into a standard Real Estate Purchase Contract (REPC). Mr. Yates signed the REPC and a document titled "Seller's Property Condition Disclosure." The Seller's Property Condition Disclosure required Mr. Yates to disclose his "actual knowledge regarding the condition of the property." The document included sections for "mold," "other moisture conditions," and "exterior and exterior features," in which Mr. Yates represented that he was not aware of any moisture-related damage to the walls, floor, or ceiling; was not aware of any mold on the interior of the house; and was not aware of any problems with any portion of the exterior of the house like moisture damage behind stucco. The Reighards knew they were purchasing a used house, and prior to closing the sale they had an independent inspection and appraisal conducted.

¶ 5 In the summer of 2005, excavation was performed so that a deck could be installed on the corner of the house. Sprinkler modifications were also made in connection with this project. In August 2006, Ms. Reighard noticed mold in the basement. Ms. Reighard called a mold remediation company, which removed and replaced most of the stucco, windows, and drainage on the house. Ms. Reighard believed that the mold was the cause of health problems her family had been experiencing.

¶ 6 The Reighards' original complaint sought damages related to seven causes of action against Mr. Yates. After he was served by Mr. Reighard, Mr. Yates filed a third-party complaint against the stucco contractor, E. Marshall Plastering, which later settled with the Reighards for $5,000 in return for being dismissed from the case. Before the case was submitted to the jury, Mr. Yates moved for a directed verdict, and all but three of the claims against Mr. Yates—negligent misrepresentation, negligence, and breach of contract—were dismissed. Experts, including Eugene Cole, Ph.D., testified at trial about the effects the mold may have had on the Reighards.

¶ 7 The jury found for the Reighards on their negligence claim and awarded them $10,000 in property damage, $0 in medical expenses, $0 for loss of use and enjoyment of residence, $0 for other economic losses, and $2,500 in noneconomic damages, including pain and suffering. On the other hand, the jury found in favor of Mr. Yates on the Reighards' negligent misrepresentation claim. The jury also found that the Reighards failed to perform some of their contractual duties. The verdict form instructed the jury to stop deliberation on the contract claim if it determined the Reighards had not done what the contract required, so the jury did not reach the question of whether Mr. Yates breached the contract. The trial court granted Mr. Yates's posttrial motion to reduce the jury verdict by $5,000 because the Reighards had already received that amount from E. Marshall Plastering. The trial court determined that there was no prevailing party in the suit and therefore neither side should receive attorney fees.

¶ 8 The Reighards and Mr. Yates raise multiple issues on appeal and cross-appeal. We have jurisdiction to hear this appeal under Utah Code section 78A-3-102(3)(j).

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 9 First, Mr. Yates appeals the trial court's conclusion that, as a builder, he owed a duty to the Reighards. In a related challenge, Mr. Yates argues that the trial court erred when it determined that the economic loss rule does not bar the Reighards' recovery for property damage. "The question of whether a duty exists is a question of law" involving an "examination of the legal relationships between the parties."[1]

■ ¶ 10 Second, Mr. Yates argues that the trial court abused its discretion by allowing Eugene Cole, Ph.D., to testify as an

1. *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC,* 2009 UT 65, ¶ 27, 221 P.3d 234 (internal quotation marks omitted).

expert witness. "A trial court has discretion in determining whether a witness has adequate qualifications to testify as an expert and in determining whether specific testimony offered by an expert should be allowed or exceeds the expert's qualifications."[2] Absent an abuse of discretion, the trial court's determination will not be disturbed by an appellate court.[3]

¶ 11 Third, the Reighards appeal the trial court's denial of their motion for judgment notwithstanding the verdict. On appeal, the court will "defer to the jury and evaluate the evidence in a light favorable to the verdict."[4] Evidentiary inferences that support the verdict will be accepted rather than contrary inferences.[5] To overturn the jury verdict, appellants "must set out in their briefs ... all the evidence that supports the verdict ... and demonstrate that reasonable people would not conclude that the evidence supports the verdict."[6]

¶ 12 Fourth, both Mr. Yates and the Reighards appeal the trial court's determination that there was not a prevailing party and therefore neither side should receive attorney fees. Determination of the prevailing party is an appropriate question for the sound discretion of the trial court and depends in large measure on the context of each case.[7] We review the trial court's determination of which party is the prevailing party under an abuse of discretion standard.[8]

¶ 13 Finally, Mr. Yates challenges the trial court's decision to award the Reighards costs as part of the final judgment in this matter and its decision to reduce the amount of the jury's verdict and interim judgment because of a third party settlement. We remand these issues without reaching the merits because, in light of our decision altering the total amount of damages recoverable, we permit the parties an opportunity to argue their positions on the reduction of damages and the allocation of costs.

## ANALYSIS

¶ 14 The economic loss rule prevents recovery of economic damages under a theory of tort liability when a contract covers the subject matter of the dispute. Thus, we hold that under the economic loss rule the Reighards may not recover economic damages to their house but may recover damages due to bodily injury. We next address the expert testimony of Eugene Cole, Ph.D., and determine that the trial court properly admitted it. We decline to overturn the jury's verdict in this case. The contract provided the only basis for awarding attorney fees and, because Mr. Yates prevailed on the contract suit, he is entitled to recover attorney fees for his defense of that cause of action. We reverse in part and remand for further determinations regarding the appropriate award of damages.

## I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT ALLOWED THE REIGHARDS AN EXTENSION OF TIME TO FILE A CROSS–APPEAL

¶ 15 Before reaching the merits of this case, we address Mr. Yates's motion to dismiss the Reighards' cross-appeal as untimely. Mr. Yates argues that the Reighards' notice of cross-appeal and motion for extension of time were not timely filed according to rule 4(d) of the Utah Rules of Appellate Procedure and that the Reighards did not demonstrate "excusable neglect" or "good cause" for an extension of time to appeal. We reject this argument. The trial court found excusable neglect and its "discretion to grant or deny a [motion for extension of time to appeal] is very broad."[9]

**2.** *Randle v. Allen,* 862 P.2d 1329, 1337 (Utah 1993).

**3.** *Id.*

**4.** *Hodges v. Gibson Prods. Co.,* 811 P.2d 151, 156 (Utah 1991).

**5.** *Id.*

**6.** *Id.*

**7.** *R.T. Nielson Co. v. Cook,* 2002 UT 11, ¶ 25, 40 P.3d 1119.

**8.** *Id.*

**9.** *Reisbeck v. HCA Health Servs. of Utah, Inc.,* 2000 UT 48, ¶ 6, 2 P.3d 447.

¶ 16 Utah Rule of Appellate Procedure 4(d) provides as follows:

**Additional or cross-appeal.** If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal is docketed, or within the time otherwise prescribed by paragraphs (a) and (b) of this rule [allowing 30 days after entry of judgment], whichever period last expires.

The trial court signed the Amended Judgment on June 18, 2010, and entered it into the docket on June 22, 2010. The Reighards were represented by local Utah counsel as well as California counsel admitted pro hac vice. California counsel received a copy of the Amended Judgment on June 25, 2010, but the copy was not date stamped. The court did not mail a copy to Utah counsel. Mr. Yates filed his notice of appeal on July 15, 2010. Under rule 4(d), the Reighards had until July 29, 2010, fourteen days after Mr. Yates's notice of appeal, to file a notice of cross-appeal. The Reighards filed their notice of cross-appeal on August 6, 2010, simultaneously filing a motion for extension of time.

¶ 17 Utah Rule of Appellate Procedure 4(e) provides the circumstances under which the trial court may extend the time for filing a notice of appeal.

**Extension of time to appeal.** The trial court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by paragraphs (a) and (b) of this rule. A motion filed before expiration of the prescribed time may be ex parte unless the trial court otherwise requires. Notice of a motion filed after expiration of the prescribed time shall be given to the other parties in accordance with the rules of practice of the trial court. No extension shall exceed 30 days past the prescribed time or 10 days from the date

of entry of the order granting the motion, whichever occurs later.

The trial court granted the Reighards' motion for extension of time because it found that the Reighards met the requirements for excusable neglect as defined in *Serrato v. Utah Transit Authority,*[10] where the court of appeals outlined four factors "relevant to a determination of excusable neglect":

[i] the danger of prejudice to [the nonmoving party], [ii] the length of the delay and its potential impact on judicial proceedings, [iii] the reason for the delay, including whether it was within the reasonable control of the movant, and [iv] whether the movant acted in good faith. These factors are not dispositive, but are helpful in determining whether excusable neglect occurred.[11]

Applying this equitable balancing approach, the trial court examined the circumstances of this case and found the following facts persuasive to the finding of excusable neglect. The Amended Judgment was not date stamped by the trial court clerk, causing confusion as to when the thirty-day deadline for filing a notice of appeal began to run. The Amended Judgment was mailed to the Reighards' counsel in California but was never mailed to local Utah counsel. The court acknowledged that it should have mailed the Amended Judgment to local counsel, "and receipt of the judgment by the local Utah counsel may have led to the timely filing of the notice of cross-appeal." Additionally, the Reighards' counsel did not receive Mr. Yates's notice of appeal until July 19 or July 20, 2010. Counsel was out of the office nine of the thirteen business days following receipt of this notice. The trial court determined that counsel's absence, combined with the court's failure to mail the Amended Judgment to local counsel, hindered the Reighards' ability to track the deadlines and file the notice of cross-appeal on time.

¶ 18 "We reemphasize that the trial court's inquiry is fundamentally equitable in nature" and merits broad deference on review.[12] The equitable nature of determining

10. 2000 UT App 299, 13 P.3d 616.

11. *Id.* ¶ 9 (alterations in original) (footnote omitted) (citations omitted) (internal quotation marks omitted).

12. *Reisbeck*, 2000 UT 48, ¶ 15, 2 P.3d 447.

excusable neglect allows the district court to consider and weigh all of the relevant facts and circumstances in a case.[13] The trial court determined that the clerical errors and oversights provided a legitimate excuse for the late notice of cross-appeal. Additionally, the motion for extension and the cross-appeal were filed eight days after the deadline, creating little danger of prejudice to Mr. Yates. The trial court did not abuse its broad discretion in granting the Reighards' motion for an extension.

## II. THE ECONOMIC LOSS RULE PREVENTS RECOVERY OF ECONOMIC DAMAGES IN TORT WHEN A CONTRACT COVERS THE SUBJECT MATTER OF THE DISPUTE

■ ¶ 19 A duty may arise from one of several sources.[14] Duties may emanate from bargains, and therefore be within the ambit of contract law, and duties may also emanate from the "interdependent nature of human society,"[15] in which case they are governed by tort principles. "The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care."[16]

■ ¶ 20 The economic loss rule prevents recovery of economic damages under a theory of nonintentional tort when a contract covers the subject matter of the dispute. The economic losses covered by the economic loss rule are

[d]amages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits— without any claim of personal injury or damage to other property ... as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.[17]

Under such circumstances, the contract is the exclusive means of obtaining economic recovery. This result is compelled because a contract may alter or eliminate common law tort duties.[18] Thus, "when a conflict arises between parties to a contract regarding the subject matter of that contract, 'the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon.'"[19]

■ ¶ 21 Whether the economic loss rule applies depends on "whether a duty exists independent of any contractual obligations between the parties."[20] However,

---

**13.** *Jones v. Layton/Okland,* 2009 UT 39, ¶ 18, 214 P.3d 859.

**14.** *See* 57A Am.Jur.2d *Negligence* § 82 (1989).

**15.** *Id.; see also Grynberg v. Questar Pipeline Co.,* 2003 UT 8, ¶ 43, 70 P.3d 1 ("Contractual duties exist by mutual agreement of the parties, while tort duties exist by imposition of society[.]").

**16.** *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC,* 2009 UT 65, ¶ 18, 221 P.3d 234 (internal quotation marks omitted).

**17.** *Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.,* 930 P.2d 1182, 1189 (Utah 1996) (second alteration in original) (internal quotation marks omitted), *abrogated on other grounds by Davencourt,* 2009 UT 65, ¶ 55, 221 P.3d 234.

**18.** *Grynberg,* 2003 UT 8, ¶ 45, 70 P.3d 1 (construing Wyoming economic loss doctrine and stating, "The effect of confusing the concept of contractual duties, which are voluntarily bargained for, with the concept of tort duties, which are largely imposed by law, would be to nullify a substantial part of what the parties expressly bargained for—limited liability.... No reason appears to support such a radical shift from bargained-for duties and liabilities to the imposition of duties and liabilities that were expressly negated by the parties themselves when they decided to abandon their status as legal strangers and define their relationship by contract." (alteration in original) (internal quotation marks omitted)).

**19.** *Id.* ¶ 41 (quoting *Snyder v. Lovercheck,* 992 P.2d 1079, 1087 (Wyo.1999)); *cf. U.S. Fid. & Guar. Co. v. U.S. Sports Specialty Ass'n,* 2012 UT 3, ¶ 13, 270 P.3d 464 (denying extracontractual restitution because "[t]o allow such a cause of action in the face of an enforceable contract governing the parties' rights would effectively add or modify terms for which they had not bargained").

**20.** *Hermansen v. Tasulis,* 2002 UT 52, ¶ 17, 48 P.3d 235; *see also Grynberg,* 2003 UT 8, ¶ 46, 70 P.3d 1.

"once there is a contract, any tort claim must be premised upon an independent duty that exists apart from the contract. All contract duties, and all breaches of those duties ... must be enforced pursuant to contract law."[21] The independent duty principle is a means of measuring the reach of the economic loss rule. When a duty exists that does not overlap with those contemplated in a contract, "the economic loss rule does not bar a tort claim 'because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.' "[22]

¶ 22 Similarly, the economic loss rule does not apply when there is "damage to *other* property."[23] This too has been characterized as an exception to the economic loss rule[24] although, like the independent duty doctrine discussed above, it delineates the extent of the rule's application. "Other property" is property that is outside the scope of a contract and unaffected by the contract bargain. When property is contemplated in the scope and subject matter of a contract, the parties to the contract can only recover for damage to that property through contract remedies. However, when property falls outside of the scope of a contract, the economic loss rule will not apply and relief may be available in tort. Under this framework, the extent to which the economic loss rule applies in any given case depends on the contract at issue and the scope of the duties and property the contract covers.

¶ 23 When interpreting a contract we must ascertain the intentions of the parties to the contract.[25] "Where the language is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[26] We also "consider each contract provision ... in relation to all of the others, with a view toward giving effect to all and ignoring none."[27]

¶ 24 Here, the basis for our contract analysis is the REPC between the Reighards and Mr. Yates. The relevant provisions of the REPC, the contract for the sale of the house from Mr. Yates to the Reighards, read:

7. SELLER DISCLOSURES. No later than the Seller Disclosure Deadline referenced in Section 24(b), Seller shall provide to Buyer the following documents which are collectively referred to as the "Seller Disclosures":

(a) a Seller property condition disclosure for the Property, signed and dated by Seller;

. . .

(d) written notice of any claims and/or conditions known to Seller relating to environmental problems and building or zoning code violations;

. . .

10. SELLER WARRANTIES & REPRESENTATIONS.

. . .

10.2 **Condition of Property.** Seller warrants that the Property will be in the following condition ON THE DATE SELLER DELIVERS PHYSICAL POSSESSION TO BUYER:

. . .

(b) ... sprinkler systems and fixtures ... will be in working order and fit for their intended purposes;

(c) the roof and foundation shall be free of leaks known to Seller[.]

In a separate document titled "Seller's Property Condition Disclosure," Mr. Yates was required to disclose his "actual knowledge regarding the condition of the property."

21. *Grynberg*, 2003 UT 8, ¶ 43, 70 P.3d 1.

22. *Hermansen*, 2002 UT 52, ¶ 17, 48 P.3d 235 (quoting *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1263 (Colo.2000)).

23. *Davencourt*, 2009 UT 65, ¶ 18, 221 P.3d 234 (emphasis added) (internal quotation marks omitted).

24. *See id.* ¶ 25.

25. *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 17, 54 P.3d 1139.

26. *Glenn v. Reese*, 2009 UT 80, ¶ 10, 225 P.3d 185 (internal quotation marks omitted).

27. *WebBank*, 2002 UT 88, ¶ 18, 54 P.3d 1139 (alternation in original) (internal quotation marks omitted).

This document included as conditions requiring disclosure "mold" and "other moisture conditions." Mr. Yates represented that he was not aware of any past or present mold on the interior of the house, that he had not had the property inspected for mold, and that he was not aware of water leakage or accumulation in the basement or moisture-related damage to the walls, floor, or ceiling.

¶ 25 The subject of the contract is the house, and the contract itself expressly addresses moisture-related damage to the house. Any tort duties that Mr. Yates owed the Reighards regarding the house therefore overlap with Mr. Yates's contract duties to the Reighards. Because the jury did not determine that Mr. Yates breached the contract and found that he had not negligently misrepresented information required under the contract, the Reighards are precluded from recovering an award for damage to the house in either contract or tort.

¶ 26 This application of the economic loss rule is consistent with Utah case law. In *Maack v. Resource Design & Construction, Inc.*, a builder and a buyer contracted for the construction of a house. The buyer then resold the house to a second buyer.[28] When the house developed water leaks, the second buyer sued the builder for negligent design and construction.[29] "The court concluded that recovery for deficiencies in the *quality* of construction 'must be defined by reference to that which the parties have agreed upon,'" i.e., the contract.[30] Likewise, in *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, we noted that the Utah Legislature codified the economic loss rule in Utah Code section 78B–4–513,[31] and explained that the economic loss rule is "particularly applicable to claims of negligent construction based on the construction industry's use of detailed and comprehensive contracts that form obligations and expectations."[32] Thus, Mr. Yates's duties relating to the house itself arose from and are limited to the contract. The jury award of $10,000 for property damage to the residence is therefore barred by the economic loss rule.

## III. THE REIGHARDS CAN RECOVER FOR BODILY INJURY

¶ 27 Mr. Yates next contends that the Reighards' negligent construction claim should have been dismissed entirely as a matter of law. He argues that he—the builder—owed the Reighards—the homebuyers—no duty in tort, and therefore any recovery in negligence, even recovery for noneconomic damages or bodily injury, is unavailable.[33]

¶ 28 Mr. Yates relies on *Davencourt at Pilgrims Landing Homeowners Ass'n*, where we held that a builder did not owe a duty to a homeowners association to act without negligence in the construction of a home.[34] In that case, property damage was the only alleged harm. The homeowners association was required to repair defects in the common areas of a development. The homeowners association sued the builder and the developer upon learning from a hired specialist that water intrusion and resulting damage stemmed from latent flaws in the design and

---

**28.** *Maack v. Res. Design & Constr., Inc.*, 875 P.2d 570, 573 (Utah Ct.App.1994), *abrogated on other grounds by Davencourt*, 2009 UT 65, 221 P.3d 234. *Davencourt* established an "implied warranty of workmanlike manner or habitability," 2009 UT 65, ¶ 60, 221 P.3d 234, a cause of action that arises under contract law, *id.* ¶ 57.

**29.** *Maack*, 875 P.2d at 573.

**30.** *Am. Towers*, 930 P.2d at 1189 (quoting *Maack*, 875 P.2d at 580).

**31.** The complaint in *Davencourt*, as in this case, was filed before the statute was enacted. *See* 2009 UT 65, ¶ 19 n. 3, 221 P.3d 234. The statute limits "an action for defective design or construction" to "breach of the contract ... including both express and implied warranties," but

provides for recovery if the defective design or construction causes "damage to other property or physical personal injury." UTAH CODE § 78B–4–513(1)–(2).

**32.** *Davencourt*, 2009 UT 65, ¶¶ 18–19, 221 P.3d 234 (internal quotation marks omitted).

**33.** *See Yazd v. Woodside Homes Corp.*, 2006 UT 47, ¶ 14, 143 P.3d 283 ("The determination of whether a legal duty exists falls to the court. It is a purely legal question, and since in the absence of a duty a plaintiff will not be entitled to a remedy, it is the first question to be answered.").

**34.** 2009 UT 65, ¶ 47, 221 P.3d 234.

construction of the buildings.[35] The builder had contracted with the developer, who sold the homes directly to unit owners. The builder in *Davencourt* was not in privity of contract with the homeowners association. This court held that the homeowners association therefore lacked "any kind of relationship"[36] with the builder that would lead to the imposition of a duty. Because "the parties ... simply lack[ed] the legal relationship necessary to find a duty,"[37] we concluded that the builder did not owe a duty to the homeowners association not to be negligent in the construction of a house.[38]

¶ 29 This court recently examined certain considerations to be used in determining whether a duty exists in *B.R. ex rel. Jeffs v. West*.[39] There, we noted that several facts may be relevant in determining whether a defendant owes a duty to a plaintiff, including "whether the defendant's allegedly tortious conduct consists of an affirmative act or merely an omission," "the legal relationship of the parties," "the foreseeability or likelihood of injury," and policy considerations including "which party can best bear the loss occasioned by the injury."[40] "Not every factor is created equal, however ... [and] some factors are featured heavily in certain types of cases, while other factors play a less important, or different role."[41] We explained in *Jeffs* that "[a]s a general rule, we all have a duty to exercise care when engaging in affirmative conduct that creates a risk of physical harm to others."[42] The parties' legal relationship is "used to impose a duty where one would otherwise not exist, such as where the act complained of is merely an omission."[43] The remaining considerations—foreseeability and policy concerns— "aid us in determining whether to carve out an exception to the general rule."[44]

¶ 30 Contrary to Mr. Yates's assertion, we have previously held that a builder does owe certain extracontractual duties to homebuyers.[45] For example, *Yazd v. Woodside Homes Corp.* recognized a claim of fraudulent concealment, holding that a builder-contractor has a duty to "disclose to his purchaser any condition which he knows or reasonably ought to know makes the subdivided lots unsuitable for such residential building."[46] The imposition of an affirmative duty to disclose was appropriate because of the legal relationship between the parties. The defendant's "status as builder-contractor [gave] rise to its legal duty to the home buyers"[47] because "the disparity in skill and knowledge between home buyers and builder-contractors leads buyers to rely on the builder-contractor's expertise."[48] And in *Williams v. Melby*,[49] this court recognized a builder's duty not to expose tenants in an apartment complex to an unreasonable risk of injury.[50] In that case, a tenant fell through a third-story bedroom window because, she alleged, the room was

35. *Id.* ¶¶ 6–8.

36. *Id.* ¶ 33.

37. *Id.* ¶ 47.

38. *Id.* ¶¶ 47, 33 ("Knowledge and expertise alone do not establish an independent duty; privity or a direct relationship is also required.").

39. 2012 UT 11, 275 P.3d 228.

40. *Id.* ¶ 5 (internal quotation marks omitted).

41. *Id.*

42. *Id.* ¶ 21.

43. *Id.* ¶ 5.

44. *Id.* ¶ 21.

45. *Davencourt*, 2009 UT 65, ¶ 28 & n. 4, 221 P.3d 234 (identifying four duties in a variety of relationships).

46. *Yazd*, 2006 UT 47, ¶ 24, 143 P.3d 283 (internal quotation marks omitted). *Yazd* also recognized that courts must often "define limits on the right to recover from remote parties." *Id.* ¶ 23 (noting that "[o]ne limiting principle that we recognize[ ] ... [is] that a duty to disclose material information is extinguished once the information is communicated or otherwise acquired by the party to whom the duty was owed").

47. *Id.* ¶ 18.

48. *Id.* ¶ 24.

49. 699 P.2d 723 (Utah 1985).

50. *Id.* at 729.

negligently designed.[51] This court concluded that the builder owed a duty to third parties "to avoid unreasonable risks created in the final product,"[52] but the ultimate determination of negligence was properly left to the jury.

¶ 31 A duty analysis in this case makes clear that Mr. Yates owed a duty to the Reighards not to expose them to an unreasonable risk of physical injury. Construction and sale of the house were affirmative acts and, furthermore, Mr. Yates and the Reighards established a legal relationship through privity of contract. The remaining considerations in *Jeffs* include foreseeability—"whether a category of cases includes individual cases in which the likelihood of some type of harm is sufficiently high that a reasonable person could anticipate a general risk of injury to others"[53]—and policy concerns including "whether the defendant is best situated to take reasonable precautions to avoid injury."[54] Both of these concerns favor a determination that a builder/seller owes a duty of reasonable care to keep homebuyers from unreasonable risks of physical harm. A reasonable builder/seller could anticipate a general risk of physical injury to homebuyers. Furthermore, builders have "a high degree of knowledge and expertise,"[55] putting them in a suitable position to take precautions to avoid such injury. We therefore conclude that Mr. Yates had a duty to use reasonable care to prevent unreasonable risks of injury to the Reighards.

¶ 32 Mr. Yates's duties to the Reighards regarding damage to the house were subsumed within the REPC. What remains is a negligence cause of action for bodily injury. The court did not err in submitting this question to the jury. The jury was instructed on negligence. The instructions included an explanation of a person's "duty to use reasonable care to avoid injuring . . . others." The jury was instructed that Mr. Yates could only be found liable if his "negligence . . . played a substantial role in causing the injuries" and "a reasonable person could foresee that injury could result from the negligent behavior." Presenting the jury with the question of Mr. Yates's liability for negligently causing the Reighards' bodily injury was not error.

¶ 33 Whether the Reighards suffered bodily injury is a question of fact. Evidence of the physical symptoms the Reighards suffered combined with evidence of the presence of mold and testimony explaining mold's adverse health effects in humans raised a genuine issue of fact for the jury to decide. The jury resolved this factual issue when it awarded the Reighards $2,500 for noneconomic loss including pain and suffering, but $0 for medical expenses. Viewed in the light most favorable to the jury's verdict, the pain and suffering award related to bodily injury and was not barred by the economic loss rule.

## IV. THE TRIAL COURT DID NOT ERR WHEN IT ADMITTED EXPERT TESTIMONY REGARDING BODILY INJURY

¶ 34 Mr. Yates contends that the only evidence suggesting mold caused the Reighards' physical symptoms was inadmissible. The Reighards called Eugene Cole, Ph. D., to testify as to causation. Mr. Yates argues that because Dr. Cole is not a medical doctor he was unqualified to testify that the mold in the residence caused the Reighards' physical symptoms.

¶ 35 Utah Rule of Evidence 702 governs the admissibility of expert testimony. It permits experts to testify regarding scientific, technical, or other specialized knowledge when that knowledge will assist the trier of fact to understand the evidence or to

---

**51.** *Id.* at 725 ("The plaintiff's apartment, which was located on the third story, was designed with a mansard roof. As a result of the design, the outside wall of plaintiff's bedroom slopes inward and the bedroom window, which is vertical, stands out from the wall and protrudes into the room. The glass part of the window is some twenty-two inches off the floor.").

**52.** *Id.* at 729.

**53.** *Jeffs*, 2012 UT 11, ¶ 27, 275 P.3d 228.

**54.** *Id.* ¶ 30.

**55.** *Yazd*, 2006 UT 47, ¶ 24, 143 P.3d 283.

determine a fact at issue.[56] Absent an abuse of discretion, the trial court's determination will not be disturbed by an appellate court.[57] This discretion is accorded to trial courts because they are "in the best position to assess the credibility of witnesses and to derive a sense of the proceeding as a whole."[58]

¶ 36 We hold that the trial court did not abuse its discretion when it allowed Dr. Cole to testify as an expert witness. The evidence before the trial court indicated that Dr. Cole was sufficiently qualified to testify. Dr. Cole has two graduate degrees in public health and his research specifically focused on the potential of microorganisms to cause adverse human health effects. He also has training in human disease and causative factors, the very issues at question in this case. Dr. Cole's testimony was admissible to assist the jury in understanding the causes and effects of mold. He examined pictures and videos of the mold and concluded that it was problematic and needed to be remediated. He also reviewed the plaintiffs' medical records and reports from the mold remediators. Furthermore, there was no serious contention that the Reighards were not exposed to the mold and experts on both sides indicated that the mold in the Reighards' home needed to be removed because of health concerns.

¶ 37 *Westberry v. Gislaved Gummi AB,*[59] a Fourth Circuit case, considered the admissibility of an expert opinion on the cause of an individual's physical symptoms. In that case, the plaintiff's "condition improved when he was not working but worsened when he returned."[60] The Fourth Circuit permitted expert testimony that analyzed "a temporal relationship between exposure to a substance and the onset of a disease or a worsening of symptoms" because, under certain circum-

stances, such evidence provides "compelling evidence of causation."[61] We agree and hold that under the circumstances of this case, Mr. Yates's complaints about Dr. Cole's testimony go to the weight of the evidence, not its admissibility. Although Dr. Cole's testimony might lack the strength of a medical diagnosis, it was not an abuse of discretion to allow him to provide an opinion about causation.

## V. THE TRIAL COURT DID NOT ERR IN NOT REOPENING THE JUDGMENT ENTERED ON THE JURY'S VERDICT

¶ 38 "A trial court should grant a motion for judgment notwithstanding the verdict if, after viewing the evidence in the light most favorable to the non-movant, it finds that no competent evidence supports the verdict. In reviewing the trial court's determination ..., this Court must apply the same standard."[62] After deliberation, the jury found for Mr. Yates on the negligent misrepresentation claim and on the breach of contract claim. The trial court upheld the verdict. On appeal, the court will "defer to the jury and evaluate the evidence in a light favorable to the verdict."[63] Evidentiary inferences that support the verdict will be accepted rather than contrary inferences.[64] In order for the jury verdict to be overturned, appellants "must set out in their briefs ... all the evidence that supports the verdict ... and demonstrate that reasonable people would not conclude that the evidence supports the verdict."[65]

¶ 39 Instead of providing the court with a traditional insufficiency of the evidence argument, and meeting their obligation to marshal evidence, the Reighards have argued that the jury was improperly instructed. For the negligent misrepresentation

**56.** Utah R. Evid. 702.

**57.** *Randle v. Allen,* 862 P.2d 1329, 1337 (Utah 1993).

**58.** *Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.,* 909 P.2d 225, 233 (Utah 1995) (internal quotation marks omitted).

**59.** 178 F.3d 257 (4th Cir.1999).

**60.** *Id.* at 265.

**61.** *Id.*

**62.** *King v. Fereday,* 739 P.2d 618, 620 (Utah 1987).

**63.** *Hodges v. Gibson Prods. Co.,* 811 P.2d 151, 156 (Utah 1991).

**64.** *Id.*

**65.** *Id.*

cause of action, the Reighards argue that, although instructed to do so on the verdict form, the jury should not have ended their deliberations after finding that Mr. Yates used reasonable care in determining whether his representations were true. The Reighards argue on appeal that knowledge is imputed to builders and contractors and therefore it should not have mattered whether Mr. Yates used reasonable care. The Reighards attempt to frame their jury instruction argument as an insufficiency of the evidence argument. We note that the Reighards failed to object to the jury instructions at trial and that a motion for judgment notwithstanding the verdict is not the proper method to object to a jury instruction. Instead of showing that the marshaled evidence does not support the verdict, the Reighards attempt to show that because the jury found that Mr. Yates represented an important fact that was not true, the same jury, if properly instructed, would have found that Mr. Yates was liable for negligent misrepresentation. This approach fails because it requires the court to speculate about what the jury would have determined if, contrary to its instructions, it had not stopped its deliberations after finding that Mr. Yates used reasonable care. For example, the jury never reached the question of whether the Reighards suffered damages as a result of relying on Mr. Yates's representations, an essential element of the claim. We therefore decline to overturn the jury's verdict and enter judgment in the Reighards' favor.

¶ 40 For the breach of contract claim, the Reighards argue that the most likely reason the jury found that Mr. Yates did not breach the REPC is that "the jury did not understand the Special Verdict Form as it pertained to the concept of Plaintiffs' obligations under the REPC." The Reighards now allege that the "catalyst for such jury confusion" was Mr. Yates's closing argument theory that the Reighards failed to comply with the mediation provision in the REPC. But the Reighards failed to object to the jury instruc-

tions and the record reveals no indication that they objected to closing argument at trial. Even if the closing argument and jury instructions were improper, the remedy would not be entering judgment in the Reighards' favor notwithstanding the verdict. Because the Reighards failed to show that the evidence in support of the verdict is insufficient as a matter of law, we defer to the jury and decline to reopen the judgment entered on the jury verdict.

## VI. MR. YATES IS THE PREVAILING PARTY IN THE CONTRACT SUIT AND IS ENTITLED TO ATTORNEY FEES

■■■■■ ¶ 41 The trial court abused its discretion in denying Mr. Yates attorney fees for his successful defense of the breach of contract action. "Attorney fees are generally recoverable in Utah only when authorized by statute or contract." [66] The REPC's section on attorney fees provides, "In the event of litigation or binding arbitration to enforce this Contract, the prevailing party shall be entitled to costs and reasonable attorney fees." Mr. Yates prevailed on the breach of contract claims although the jury awarded damages to the Reighards on their tort claims. The REPC provides the only basis for awarding attorney fees and limits those fees to litigation "to enforce this Contract." Therefore, Mr. Yates can recover only those attorney fees incurred in pursuing the contract action.[67] On remand, Mr. Yates must

> categorize the time and fees expended for (1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees.... The trial court, in turn, must make an independent evaluation of the reasonableness of the requested fees in light of the parties' evidentiary submissions.[68]

66. *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 52, 56 P.3d 524.

67. *See id.* ¶ 56.

68. *Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998) (internal quotation marks omitted).

A court cannot award all attorney fees requested if they have not been allocated as to separate claims, but may deny attorney fees altogether for failure to allocate.[69]

## VII. WE REMAND THE ISSUES RAISED UNDER RULE 68(b) OF THE UTAH RULES OF CIVIL PROCEDURE AND THE REDUCTION OF THE JURY VERDICT

¶ 42 In light of our decision barring recovery for property damage, the total award to the Reighards is now $2,500. Under rule 68(b) of the Utah Rules of Civil Procedure, when a party makes an offer to resolve all claims under the rule,

> [i]f the adjusted award is not more favorable than the offer, the offeror is not liable for costs, prejudgment interest or attorney fees incurred by the offeree after the offer, and the offeree shall pay the offeror's costs incurred after the offer. The court may suspend the application of this rule to prevent manifest injustice.

¶ 43 Mr. Yates served an Offer of Judgment on the Reighards for the amount of $10,000. The Reighards have not had the opportunity to argue that an award of costs would create manifest injustice. Such an argument is plausible in light of the trial court's consistent rulings that the economic loss rule did not bar property damage and the jury's award of $12,500 in the Reighards' negligence case. We therefore remand this issue to the district court.

¶ 44 We also leave to the district court the determination of whether the $5,000 settlement with the stucco contractor would result in the Reighards receiving "double recovery for the same loss."[70] The Reighards settled with the stucco contractor for $5,000 before the case went to trial. The details of the settlement are unclear in the parties' briefs and the district court is in a better position to determine whether the settlement provided compensation only for property damage, in which case the Reighards can still recover fully for their noneconomic damages.

69. *Id.* at 57.

## CONCLUSION

¶ 45 We hold that under the economic loss rule the Reighards may not recover the $10,000 awarded for damages to their house but may recover the $2,500 awarded for noneconomic damages including pain and suffering. We also hold that the trial court did not err in allowing Dr. Cole to testify as an expert witness or in upholding the jury's verdict. We therefore affirm in part and reverse in part the jury's award of damages to the Reighards. Mr. Yates is the prevailing party on the contract cause of action and therefore may recover attorney fees incurred defending the breach of contract claim. We remand to the trial court for determination of the proper allocation of costs under rule 68(b) of the Utah Rules of Civil Procedure. We also remand for determination of whether the settlement with the stucco contractor would result in double recovery for the same loss.

70. *Brigham City Sand & Gravel v. Mach. Ctr., Inc.,* 613 P.2d 510, 511 (Utah 1980).