FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

June 14, 2013

**Elisabeth A. Shumaker**
**Clerk of Court**

JACK SIMANTOB,

       Plaintiff - Appellant,

v.

MULLICAN FLOORING, L.P.; DERR
FLOORING COMPANY,

       Defendants - Appellees.

No. 12-4090
(D.C. NO. 2:09-CV-00379-CW)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **LUCERO, MURPHY,** and **MATHESON,** Circuit Judges.

Jack Simantob, acting as trustee, purchased flooring from J&S Designer Flooring

("J&S") on behalf of Paradise Trust for installation at a rug business. Mullican Flooring,

L.P., supplied the flooring to J&S, and Derr Flooring Company distributed it. The

flooring delaminated after installation.

Mr. Simantob did not sue the seller, J&S. He instead sued Mullican Flooring and

Derr Flooring (collectively "Defendants") for breach of implied warranties, breach of

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

contract, products liability, negligence, and violations of the Utah Consumer Sales Practices Act ("UCSPA") and the Uniform Commercial Code ("UCC"). The district court dismissed Mr. Simantob's contract claim for failure to state a claim and granted summary judgment to the Defendants on all other claims. The court invited Mr. Simantob to move for leave to file a second amended complaint but later denied his motion to amend as untimely and futile.

Mr. Simantob appeals the district court's dismissal of his tort claims on summary judgment and its denial of his motion to amend. The Defendants move to dismiss this appeal, arguing that we lack jurisdiction because Mr. Simantob prepared, signed, and filed his notice of appeal pro se without the district court's permission, in violation of D. Utah Civ. R. 83-1.3(d). We deny the Defendants' motion because the notice of appeal complies with Fed. R. App. P. 3 and 4.

Exercising jurisdiction under 28 U.S.C. § 1291, we reverse in part, affirm in part, and remand the case to the district court for further proceedings consistent with this opinion.

## I.  BACKGROUND

### A. *Factual History*

Mr. Simantob is trustee of the Paradise Trust, which owns the Simantob Gallery, a Utah business that sells and cleans rugs. His nieces and nephews are the trust beneficiaries. Paradise Trust is the lessee for the building that houses Simantob Gallery.

On June 23, 2008, Mr. Simantob purchased 8,764 square feet of RidgeCrest flooring from J&S, a New Jersey business owned by a relative of Mr. Simantob. Mullican Flooring, a Delaware partnership, supplies its RidgeCrest flooring to J&S. Derr Flooring, a Pennsylvania business, distributes it. Paradise Trust purchased the flooring with a $29,665 check, which Mr. Simantob signed as the trustee.

In December 2008, the flooring was delivered to the Simantob Gallery. Mr. Simantob also purchased subflooring from Lone Wolfe Hardwood Flooring, Inc., a Utah business, and hired Lone Wolfe to install the flooring and subflooring. During installation, some of the flooring began to delaminate. Upon inspection, Mr. Simantob discovered installation instructions inside the flooring packaging that the installers appear to have overlooked.

Mr. Simantob made a formal claim about the delamination to Mullican Flooring. Mullican determined that site conditions caused the delamination and denied the claim. This litigation ensued.

## B. *Procedural History*

On March 16, 2009, Mr. Simantob filed suit against Mullican Flooring in Utah state court, alleging breach of implied warranties, breach of contract, products liability, and negligence. He sought damages for his lost purchase price, $29,665; costs of shipping, installation, and removal; damage to the subflooring; and loss of business. He did not seek any personal injury or property damages other than the damage to his subflooring.

Mullican timely removed the case to the United States District Court for the District of Utah based on diversity jurisdiction. On January 19, 2010, Mr. Simantob filed his first amended complaint, adding Derr Flooring as a defendant and adding claims under the UCSPA and the UCC.[1] He never included J&S as a defendant.

On February 3, 2010, the Defendants moved under Fed. R. Civ. P. 12(c) to dismiss the breach of contract claim. The district court granted the motion because the Defendants were not parties to a contract with Mr. Simantob.

On January 31, 2011, the Defendants moved for summary judgment on the remaining claims in the first amended complaint: breach of implied warranty, products liability, negligence, UCSPA violations, UCC violations, and all related punitive damages. The district court granted summary judgment on all claims. At the summary judgment hearing, the district court told Mr. Simantob that he could move for leave to file a second amended complaint.

On August 23, 2011, Mr. Simantob filed a motion for leave to amend. He sought to allege that the Defendants had violated the UCSPA by providing false information about the origin of their products. He also sought to add Paradise Trust as a plaintiff. The district court denied the motion, finding that the change in argument was untimely

---

[1] Mr. Simantob also added a separate claim for punitive exemplary damages related to these claims. The district court determined there is no such separate claim but that punitive damages might be recoverable if Mr. Simantob were successful on one of his tort claims. The court therefore allowed Mr. Simantob to proceed with his requests for punitive damages only on his products liability and negligence claims.

and the change in parties was futile. Final judgment was entered on May 2, 2012. Mr. Simantob filed a timely notice of appeal.

## II. **DISCUSSION**

Mr. Simantob challenges the district court's grant of summary judgment to the Defendants on the products liability, negligence, and UCSPA claims and the court's denial of his motion to amend the parties. He does not challenge the district court's dismissal of his breach of contract, breach of implied warranties, or UCC claims.

### A. *Summary Judgment*

"We review the district court's grant of summary judgment de novo, applying the same standards that the district court should have applied." *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1302 (10th Cir. 2011) (quotations omitted). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because this is a diversity jurisdiction case, we apply the substantive law of Utah and federal procedural law, including federal summary judgment rules. *Brown v. Sears, Roebuck & Co.*, 328 F.3d 1274, 1278 (10th Cir. 2003); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Mr. Simantob challenges the summary judgment against him on two fronts. First, he argues that his products liability and negligence claims should survive summary judgment because the Defendants owed an independent duty of care to him and because the flooring caused damage to the subflooring at Simantob Gallery. We disagree with his

independent-duty argument, but we agree with his subflooring argument. Second, he argues that the district court improperly failed to consider his false-origin argument in support of his UCSPA claim. We disagree.

1. **Utah's economic loss rule and Mr. Simantob's products liability and negligence claims**

In his first amended complaint, Mr. Simantob claimed that he should recover under a products liability theory because the Defendants "designed, engineered, marketed, supplied, distributed, and/or sold the wood flooring" that he purchased, and because the flooring was "defective" and "unreasonably dangerous." Aplt. Appx. at 59. He also argued that he should be able to recover for the Defendants' negligence in manufacturing and/or supplying the defective flooring. *Id.* at 60-61. The district court said Utah's economic loss rule barred these claims.

Utah's economic loss rule provides that "an action for defective design or construction is limited to breach of the contract, whether written or otherwise, including both express and implied warranties" unless there is "damage to other property or physical personal injury . . . caused by the defective design or construction." Utah Code Ann. § 78B-4-513.

The economic loss rule requires that a contract claim provide the remedy for an "economic loss." *See SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 28 P.3d 669, 681 (Utah 2001). Economic losses include "costs of repair and replacement of the defective product, or consequent loss of profits . . . as well as the

diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1189 (Utah 1996) (quotations omitted), *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234 (Utah 2009). In short, economic losses are those that arise from breach of contract. *SME*, 28 P.3d at 681. Accordingly, these losses can be recovered under a contract claim but generally not an unintentional tort claim. *See Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 230 P.3d 1000, 1006 (Utah 2010).

In this way, the economic loss rule creates a "fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care." *Id.* (quotations omitted). The rule therefore precludes unintentional tort recovery for economic loss from both parties to a contract and from entities that were not direct parties to a contract, such as intermediaries and manufacturers, "to prevent the imposition of economic expectations on non-contracting parties." *Fennell v. Green*, 77 P.3d 339, 344 (Utah Ct. App. 2003) (quotations omitted), *abrogated on other grounds by Davencourt*, 221 P.3d at 249.

The economic loss rule manifests itself most clearly in the area of products liability, from which it originates: parties cannot recover for the cost of defective goods using tort claims because contract law covers such claims. *Hermansen v. Tasulis*, 48

-7-

P.3d 235, 239 (Utah 2002). If plaintiffs sue in tort and "claim . . . personal injury or damage to *other property*"—that is, property other than the property bought and sold under the contract—then no economic loss is claimed and the case may proceed under tort law. *Am. Towers*, 930 P.2d at 1189. As discussed further below, "other property" includes personal property that is not an "integrated" element of the defective product. *Davencourt*, 221 P.3d at 243-44.

The economic loss rule includes one exception: economic losses may be recovered for unintentional tort claims that are "based on a *recognized independent* duty of care." *Hermansen*, 48 P.3d at 240. The independent duty of care must be separate from any "contractual obligations between the parties." *Id.* This independent duty should not be confused with the reasonable duty of care underlying tort claims generally. "[S]pecial relationships"—such as attorney-client, physician-patient, and insurer-insured relationships—can "automatically trigger an independent duty of care that supports a tort action" for economic loss. *Town of Alma v. Azco Const., Inc.*, 10 P.3d 1256, 1263 (Colo. 2000); *see also Hermansen*, 48 P.3d at 240 (adopting the Colorado Supreme Court's interpretation of the economic loss rule). As explained below, the independent duty of care exception to the economic loss rule does not apply to the Defendants in this case.

Under the economic loss rule, Mr. Simantob faces a difficult challenge. He primarily seeks to recover economic losses: damages for his lost purchase price, $29,665; costs of shipping, installation, and removal; and loss of business. Because he did not sue the seller of the flooring, J&S, and the Defendants were not parties to the

contract, he cannot recover those economic losses because he has no contract claim. He therefore can recover his economic losses from the Defendants if he can show that they had an independent duty to him. His only other hope for any recovery would be for non-economic damages if the flooring caused him personal injury or harmed other property. The only non-economic damages Mr. Simantob claims are for the cost of his subflooring, which was allegedly damaged by the installation and removal of the flooring.

a. *Independent duty exception*

Mr. Simantob argues that the independent duty exception to the economic loss rule should apply based on the Utah Products Liability Act and the Second and Third Restatements of Torts. These provisions establish strict products liability for defective products, regardless of whether the user or consumer entered a contract with the seller. Utah Code Ann. § 78b-6-701 to -707; Restatement (Third) of Torts: Products Liability §§ 1, 14 (1998); Restatement (Second) of Torts § 402A (1965).

Products liability law generally does not create an independent duty of care. Moreover, these provisions do not provide recovery for economic losses. They establish the basis for unintentional tort recovery of non-economic losses and require that the plaintiff show either personal injury or damage to "other property." *C.A. Johnson Trenching, L.C. v. Vermeer Mfg. Co.*, No. 20030714-CA, 2005 WL 487881, at *1 (Utah Ct. App. 2005) (unpublished) ("Mere damage to the product itself is insufficient to support a products liability claim."); *see also E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 867-68 (1986) (explaining that there is a "distinction

between warranty and strict products liability" so that recovery under strict products liability is not available when a "product damages itself" or fails "to function properly" (quotations omitted)). In fact, the economic loss rule originated as a way of "limiting damages in products liability cases where there is no physical injury" or damage to "other property" and where there are only "economic losses." *Hermansen*, 48 P.3d at 239.

\* \* \*

In sum, Mr. Simantob cannot recover economic damages for breach of contract because he has no contract claim against the Defendants. Furthermore, the strict products liability provisions that he cites do not create an exception based on an independent duty of care that would allow Mr. Simantob to recover for the cost of the product that was sold to him; its shipping, installation, or removal; or his subsequent loss of business. Those provisions allow recovery only for damage to his person or "other property." Mr. Simantob argues there was, apart from economic loss, damage to his subflooring. To evaluate this argument, we must understand what Utah law considers to be "other property."

b. *Damage to "other property"*

In support of his tort claims for damages, Mr. Simantob argues that the defective flooring caused damage to the subflooring that was installed simultaneously. At the summary judgment hearing, he contended that this should qualify as damage to "other property," which falls outside the economic loss rule. Defendants argued that the subflooring was not "other property" because it was "an integral part of the [flooring]

system." Aplee. Suppl. Appx., Vol. III at 527. Any damage to it, they contended, was therefore economic loss, which, as we have seen, Mr. Simantob cannot recover because he has no contract claim and cannot rely on the independent duty exception to allow his tort claim for economic loss.

The Defendants pointed to cases from the Utah Supreme Court, which held "construction components integrated into a finished product do not constitute 'other property.'" *Davencourt*, 221 P.3d at 243 (capitalization omitted); *see also Am. Towers*, 930 P.2d at 1191. They maintained that, because Mr. Simantob installed the RidgeCrest flooring along with the subflooring as part of a larger construction project, the subflooring is not "other property." The Defendants also cited *Foremost Farms USA Co-op v. Performance Process, Inc.*, 726 N.W.2d 289 (Wis. Ct. App. 2006). In that case, the Wisconsin Court of Appeals said property that "becomes integrated into a completed product or system [along with the defective property at issue] . . . ceases to be 'other property' for purposes of the economic loss doctrine." *Id.* at 736.

Mr. Simantob argued that, unlike the Wisconsin test, the Utah test requires that the property be part of the same contract to be considered "integrated." Aplee. Suppl. Appx., Vol. III at 528-29. Because Mr. Simantob purchased the RidgeCrest flooring and the subflooring from different providers, he argued, the two pieces of property were not part of the same contract and the subflooring should therefore be "other property." *Id.* at 528-29. The district court rejected this argument, saying "[t]he cases don't talk about

-11-

integrated into the contract. They talk about it being an integrated product." *Id.* at 529.

We disagree.

In a case decided after the summary judgment hearing in this case, the Utah

Supreme Court defined "other property" as "property that is outside the scope of a

contract and unaffected by the contract bargain." *Reighard v. Yates*, 285 P.3d 1168, 1177

(Utah 2012). It explained that "when property falls outside of the scope of a contract, the

economic loss rule will not apply and relief may be available in tort." *Id.* The Utah cases

cited by the Defendants specifically state that property that is "an integrated unit *under*

*one general contract*" will not qualify as "other property." *Davencourt*, 221 P.3d at 244

(emphasis added) (quoting *Am. Towers*, 930 P.2d at 1191). *Foremost Farms*, the

Wisconsin case, is not controlling authority and would expand the Utah Supreme Court's

definition of "integrated products."

In this case, the subflooring was installed with the flooring *after* each was sold

separately to Mr. Simantob by two independent sellers under two separate contracts. The

subflooring therefore "falls outside of the scope" of his contract for the flooring

manufactured by the Defendants. *See Reighard*, 285 P.3d at 1177. Under Utah law, he

may therefore bring a tort claim against the Defendants to recover for the damage to his

subflooring.

At summary judgment, the Defendants, as the movants, had the burden of making

a prima facie case that there was "no genuine issue of material fact." *Adler v. Wal-Mart*

*Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477

-12-

U.S. 317, 322-23 (1986)). They argued that Mr. Simantob provided no evidence to support the essential "other property" element of his products liability and negligence claims. Aplee. Suppl. Appx., Vol. I at 194 (citing *Adler*, 144 F.3d at 670-71). In their reply memorandum, the Defendants argued that Mr. Simantob had not provided evidence that the subflooring was "other property." Aplee. Suppl. Appx., Vol. III at 428-29.

The problem with the Defendants' arguments is that Mr. Simantob did supply such evidence. He provided receipts from the purchases of the flooring and the subflooring, which proved that he purchased the flooring and subflooring from two different sellers in two separate transactions. Aplee. Suppl. Appx., Vol. II at 342-43, 345-46. The subflooring is therefore *not* part of the same contract as the flooring, making it "other property" under Utah law.

The Defendants would have us rule that property need not be purchased under one general contract to be considered integrated property. The Utah Supreme Court has said otherwise. *See Reighard*, 285 P.3d at 1177. We therefore reverse the district court's grant of summary judgment to the Defendants on Mr. Simantob's products liability and negligence claims and remand these claims to the district court for further proceedings consistent with this opinion.

2. **Mr. Simantob's UCSPA claim**

In his first amended complaint, Mr. Simantob also claimed that the Defendants violated the UCSPA when they "intentionally and/or negligently failed to inform [him] that the wood flooring had a defective and dangerous condition which would cause it to

delaminate unless installed in a room temperature of 60 degrees and relative humidity of 33-55%" before he purchased the product and "concealed . . . that the sale of wood flooring . . . involved the exclusions and disclaimer of warranties." Aplt. Appx. at 62.

In his opposition to the Defendants' motion for summary judgment, Mr. Simantob changed his UCSPA claim, arguing that the Defendants misrepresented how and where their flooring was produced. He stated that (1) on October 22, 2009, in support of its opposition to Mr. Simantob's motion for leave to amend, Mullican filed an employee's declaration stating that the flooring Mr. Simantob purchased was manufactured by an Indonesian company; (2) until April 30, 2010, the Mullican website advertised that its flooring was made in the United States at one of its plants and "inspected by [its] professional graders and quality control specialists;" and (3) the website was changed after April 2010 to state that the flooring was "made in partnership with overseas facilities." *Id.* at 105.

The district court granted summary judgment against Mr. Simantob's UCSPA claim because his first amended complaint did not allege misrepresentation of origin, the claim Mr. Simantob attempted to raise at summary judgment. The court said the complaint provided insufficient notice to the Defendants that Mr. Simantob intended to bring claims under that theory. Allowing Mr. Simantob to make arguments at the summary judgment hearing that were not in his complaint would, the court said, prejudice the Defendants. Mr. Simantob argues on appeal that the district court should have considered his misrepresentation of origin theory. We disagree.

It is not enough that Mr. Simantob raised the general issue of implied warranties of merchantability and fitness for a particular use in his initial complaint. Although the plaintiff need not plead every relevant fact supporting his legal theory, his pleading must be sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" to prevent prejudice to the defendant. *Zokari v. Gates*, 561 F.3d 1076, 1084 (10th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). We have warned that reading complaints too broadly to include any possible theory of recovery "could create injustice" by requiring defendants to infer every potential argument a plaintiff could later make. *Id.* (holding that a plaintiff's Title VII claim alleging discrimination and retaliation by a government employer was insufficient to place the defendant on notice that the plaintiff intended to include a claim for unpaid wages under Department of Labor regulations).

Mr. Simantob failed to allege facts in his complaint that would support the false origin theory. The district court properly dismissed the claim on summary judgment. We affirm the district court's grant of summary judgment to the Defendants on Mr. Simantob's UCSPA claim.

## B. *Motion for Leave To Amend*

We do not reach the district court's denial of Mr. Simantob's motion for leave to amend the complaint. The district court's resolution of Mr. Simantob's products liability and negligence claims on remand may affect that issue. We therefore remand to the district court.

## III. **CONCLUSION**

We deny Defendants' motion to dismiss this case for lack of jurisdiction.

We reverse the district court's grant of summary judgment in favor of the defendants on Mr. Simantob's products liability and negligence claims and remand these claims to the district court. The economic loss rule bars recovery absent a showing of an independent duty of care, personal injury, or damage to "other property." Mr. Simantob failed to show that the Defendants owed an independent duty of care that would create an exception to Utah's economic loss rule, nor did he show personal injury. But he did provide evidence that there was at least a genuine dispute of material fact as to whether the damaged subflooring qualified as "other property."

We affirm the district court's grant of summary judgment on Mr. Simantob's UCSPA claim. Mr. Simantob failed to allege facts in his complaint to support his argument that the Defendants made false statements about the origin of their products.

We do not reach the district court's denial of Mr. Simantob's motion for leave to amend the complaint. Resolution of Mr. Simantob's negligence and products liability claims may affect that issue. We therefore remand that issue to the district court along with the tort claims for further proceedings consistent with this opinion.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge


-16-