2013 UT App 135

# THE UTAH COURT OF APPEALS

JERROLD L. CROSS; *LAKE FOREST PROPERTIES LLC; AND COLCO
DEVELOPMENT, INC.*,
Plaintiffs and *Appellants*,
*v.*
DAVID W. OLSEN AND HEARTHSTONE DEVELOPMENT, INC.,
Defendants and Appellees.

Opinion
No. 20120107-CA
Filed May 23, 2013

Fourth District, Provo Department
The Honorable Lynn W. Davis
No. 100400063

Richard G. Allen, Attorney for Appellants
Frederick A. Jackman, Attorney for Appellees

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
concurred.

VOROS, Judge:

¶1 Plaintiffs Lake Forest Properties LLC and Colco Development, Inc. (Lake Forest) appeal the trial court's grant of summary judgment in favor of Defendants David W. Olsen and Hearthstone Development, Inc. (collectively, Defendants). We reverse and remand for further proceedings.[1]

---

1. We also vacate our earlier order sealing the record and briefs filed in this court.

BACKGROUND

¶2     This appeal involves an action for indemnification. In earlier litigation related to but separate from the present case, Lake Forest sued Olsen, Jerrold L. Cross, and Painted Horse Holdings, LC for breach of a water purchase agreement (the Lake Forest Action). Painted Horse was owned and, at different times, managed by Cross and Hearthstone Development. Hearthstone was managed by Olsen.

¶3     Cross and Defendants were involved in a number of disputes in addition to the Lake Forest Action. During the course of the Lake Forest Action, Cross entered into a settlement agreement with Defendants (the Settlement Agreement). Four provisions of that Settlement Agreement are at issue in this appeal.

¶4     First, the Settlement Agreement contained a requirement that Defendants indemnify Cross for certain claims (the Indemnity Provision). In the Indemnity Provision, Defendants agreed to indemnify Cross "from any loss or damage, including reasonable attorneys fees and costs, arising out of the following claims against Painted Horse: . . . The Lake Forest Action." The Indemnity Provision was attached as an appendix to the Settlement Agreement.

¶5     Second, the Settlement Agreement contained a mutual release provision (the Release Provision). The Release Provision states that "the Parties . . . hereby fully and forever release, acquit and discharge one another . . . from any and all claims . . . arising out of, connected with or in any manner related to the Lawsuits or any other potential claims which could have been raised in the Lawsuits . . . ."

¶6     The third relevant provision of the Settlement Agreement is a notice requirement (the Notification Provision). The Notification Provision states that Defendants "shall notify [Lake Forest] . . . that

[Defendants] are solely responsible for the resolution of [the Lake Forest Action]."

¶7    Finally, the principal focus of this appeal is the Settlement Agreement's requirement of confidentiality (the Confidentiality Provision). The Confidentiality Provision forbids the disclosure of any terms or conditions of the agreement, with limited enumerated exceptions:

> This Agreement, excluding the Appendices, shall be kept in strict confidence. No terms or conditions of this Agreement may be disclosed to any third party, other than . . . (e) under seal to the Fourth Judicial District Court of Utah County, Utah to enforce the terms of this Agreement.

As noted above, the Appendices included the Indemnity Provision.

¶8    After Cross and Defendants executed the Settlement Agreement, Cross attempted to extricate himself from the Lake Forest Action. Cross stated to Lake Forest that "Painted Horse, Olsen and Hearthstone were obligated to pay the amounts owed to [Lake Forest] by reason of the Settlement Agreement." He also stated that "if [Lake Forest] dismissed the Lake Forest [Action] against Cross, Cross would be able to get Painted Horse, Olsen and/or Hearthstone to pay the amounts owed to [Lake Forest]." He said that due to a confidentiality provision, he "could not disclose the specific terms of [the settlement] agreement," nor could he "disclose why dismissing Cross from the Lake Forest Action would help resolve the matter." But he assured Lake Forest that it "would be paid if Cross was dismissed."

¶9    Lake Forest dismissed Cross from the Lake Forest Action. Defendants never notified Lake Forest that they were responsible for resolution of that litigation and, in fact, denied any such obligation when Lake Forest approached them seeking payment. After Cross's promises of payment did not materialize, Lake Forest

rejoined Cross in the Lake Forest Action. Lake Forest later dismissed Olsen from that action, after which a stipulated judgment was entered against Painted Horse and a default judgment was entered against Cross. Judgment was entered jointly and severally against Painted Horse and Cross.

¶10    After judgment was entered against Cross in the Lake Forest Action, Cross filed the present action against Defendants, seeking indemnification under the Settlement Agreement. Cross did not file this case under seal. However, Cross moved to seal the record the next day. Cross then assigned his interest in the present litigation to Lake Forest in an attempt to satisfy the earlier default judgment entered against him in the Lake Forest Action. After Lake Forest was joined as a party in the present litigation, Lake Forest and Defendants filed cross-motions for summary judgment.

¶11    The trial court granted summary judgment in favor of Defendants on the ground that Cross breached the Confidentiality Provision of the Settlement Agreement by disclosing the terms and conditions of the Settlement Agreement to Lake Forest and by filing this action not under seal. The court concluded that these breaches were material and excused any performance under the Indemnity Provision by Defendants.

ISSUE AND STANDARD OF REVIEW

¶12    Lake Forest challenges a summary judgment ruling that (1) as a matter of law Lake Forest breached the Confidentiality Provision and that, (2) under the "first breach" rule, Lake Forest's breach excused Defendants' performance under the Indemnity Provision. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in

the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted).

ANALYSIS

I. Breach of the Confidentiality Provision

¶13 Lake Forest first challenges the trial court's ruling that it breached the Settlement Agreement by violating the Confidentiality Provision. The Confidentiality Provision states, "This Agreement, excluding the Appendices, shall be kept in strict confidence. No terms or conditions of this Agreement may be disclosed to any third party, other than . . . (e) under seal to the Fourth Judicial District Court of Utah County, Utah to enforce the terms of this Agreement." Unauthorized disclosure subjects the breaching party to liquidated damages of $100,000.

¶14 The trial court based its ruling on two grounds: first, Cross breached the Confidentiality Provision by revealing terms or conditions of the agreement through his statements made in the Lake Forest Action; second, Cross breached the Confidentiality Provision by filing the present case not under seal.

A. Cross's Statements to Lake Forest

¶15 The trial court ruled that Cross's statements, summarized above, "disclos[ed] the essential provisions of the agreement." Lake Forest correctly asserts that "[t]he District Court did not point to any terms or conditions that were disclosed." However, Defendants assert three possible bases for this ruling. Defendants argue that Cross's statements disclosed the following aspects of the Agreement: (1) "that the Settlement Agreement contains an indemnification agreement," (2) that the Settlement Agreement contains a release provision, and (3) "that the agreement contains confidentiality restrictions." We address each possible basis in turn.

1. Indemnity Provision

¶16     Defendants maintain that Cross breached the Confidentiality Provision by disclosing the existence of the Indemnity Provision. Lake Forest responds that Cross was entitled to disclose the existence of the Indemnity Provision under the terms of the Confidentiality Provision itself. That provision expressly excludes appendices to the Agreement, and the Indemnity Provision was an appendix to the Agreement. Defendants do not rebut this contention, and we see no persuasive response. We therefore conclude that Cross's disclosure of the Indemnity Provision does not support the summary judgment.

2. Release Provision

¶17     Defendants also maintain that Cross breached the Confidentiality Provision by disclosing the existence of the Release Provision. Lake Forest responds that Cross's statements were insufficient to imply the existence of the Release Provision. Defendants do not explain the connection between the Release Provision and Cross's statements. They point out that Cross stated that he "would be able to get Painted Horse, Olsen and/or Hearthstone to pay the amounts owed" to Lake Forest, but do not explain how this statement relates to the Release Provision. Nor is the connection apparent. Accordingly, we conclude that, based on the current state of the record, the trial court erred to the extent its ruling was premised on the disclosure of this term of the Agreement.

3. Confidentiality Provision

¶18     Finally, Defendants maintain that Cross breached the Confidentiality Provision by revealing the existence of the Confidentiality Provision itself. Lake Forest responds that Defendants never alleged in the trial court that Cross disclosed "that the agreement contains confidentiality restrictions" and that had Defendants advanced this allegation, Lake Forest would have

refuted it. However, Lake Forest's opening brief acknowledges that, when asked how Cross could get Defendants to pay Lake Forest, Cross and his counsel stated "that they were prevented from giving any explanation by the confidentiality provision of the Settlement Agreement." Furthermore, the affidavit Lake Forest provided to the trial court stated that Cross told Lake Forest that he could not disclose the terms of the Settlement Agreement and could not disclose why dismissing him from the suit would resolve the matter, "because of the confidentiality requirements of the Settlement Agreement." Accordingly, by Lake Forest's own acknowledgment at trial and on appeal, Cross's comments did reveal the existence of a confidentiality provision in the Settlement Agreement.

¶19    Lake Forest has not shown that the disclosure was legally permissible. We do not consider the practicability of a confidentiality provision requiring the parties not to disclose the confidentiality provision itself. *Cf. Commercial Real Estate Inv., LC v. Comcast of Utah II, Inc.*, 2012 UT 49, ¶ 29, 285 P.3d 1193 ("[P]arties should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side." (citation and internal quotation marks omitted)). Suffice it to say that Lake Forest does not address whether the language of the contract supports such a reading and cites no case law that would prevent such a reading of the Confidentiality Provision. We therefore conclude that, to whatever extent the summary judgment rests on disclosure of the Confidentiality Provision, Lake Forest has shown no error in it. *See State v. Robison*, 2006 UT 65, ¶ 21, 147 P.3d 448 (stating that the appellant carries the burden of persuasion on appeal and the appellate court will not "do the heavy lifting" for the appellant).

B. Filing the Case Not Under Seal

¶20    The act that most troubled the trial court was Cross's filing of the complaint not under seal in the present case. The trial court deemed it "an open, egregious and notorious breach of a material

provision of the agreement." Lake Forest, to whom Cross later assigned his interest in this litigation, challenges this ruling, noting that "the case was sealed the day after the complaint was filed." Lake Forest further argues that while "[n]ot filing the complaint under seal created the risk that the terms and conditions of the Settlement Agreement could have been disclosed to a third party," Defendants do not allege any actual disclosure to a third party. The gist of this argument is that the record does not indicate that anyone actually read the complaint who would not have read it had it been filed under seal.

¶21    Defendants respond with the words of the trial judge: "The filing of an action that is not done under seal is open and notorious and constitutes publication to the entire world. That disclosure goes to the very heart of the confidentiality provision within the agreement." They also allege that "[a]lthough Cross filed a motion to seal the file the following day," it was not ordered sealed until "approximately 10 days after that."[2]

¶22    Although the Settlement Agreement does not expressly prohibit the filing of a lawsuit not under seal, it contains a discernible negative pregnant to that effect:

> This Agreement, excluding the Appendices, shall be
> kept in strict confidence. No terms or conditions of
> this Agreement may be disclosed to any third party,
> other than . . . (e) under seal to the Fourth Judicial

---

2. Once a motion to seal is made, the case is treated as sealed until the court rules on the motion. *See* Utah Code Jud. Admin. R. 4-202.04(2)(C) (stating that after a motion is filed to classify a record as private, protected, or sealed, "[t]he court shall deny access to the record until the order is entered"). The trial court's final order states, "Although Plaintiff filed a request to file the complaint under seal the next day, it is undisputed that the complaint was not originally filed under seal."

> District Court of Utah County, Utah to enforce the
> terms of this Agreement.

Stating that the terms of the Settlement Agreement may not be disclosed except in a lawsuit filed *under seal* implies that a lawsuit filed not under seal would constitute disclosure. On the other hand, the provision's operative term is *disclosed*, which, we agree with Lake Forest, does seem to contemplate communication to some third party.

¶23   Lake Forest's brief makes no attempt to deal with the implications of the wording of this passage of the Settlement Agreement. And although this issue presents a quintessential question of contract interpretation, Lake Forest cites no relevant case law. *See* Utah R. App. P. 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on."). Nor does Lake Forest's brief cite any persuasive authority addressing whether filing a complaint not under seal, without more, may constitute a disclosure. *Compare, e.g.*, *Baella-Silva v. Hulsey*, 454 F.3d 5, 11–12 (1st Cir. 2006) (holding that filing a document on the district court's electronic filing system constituted disclosure of the terms of a settlement agreement), *with Tsintolas Realty v. Mendez*, 984 A.2d 181, 186–87 (D.C. 2009) (holding that attaching a copy of a settlement agreement to a motion did not constitute a material breach of a confidentiality provision). In short, Lake Forest has not carried its burden as appellant to demonstrate that the trial court made an error of law. *See Robison*, 2006 UT 65, ¶ 21. We therefore conclude that, to the extent the summary judgment rests on the filing of the complaint not under seal, Lake Forest has shown no error in it. In sum, we affirm the trial court's ruling that Cross breached the Confidentiality Provision of the Settlement Agreement insofar as that ruling rests on Cross's disclosure of the Confidentiality Provision and Cross's filing of the complaint not under seal.

## II. The First Breach Rule

¶24  Next, Lake Forest challenges the trial court's ruling that, under the first breach rule, Cross's breach of the Confidentiality Provision "excus[ed D]efendants from future performance and entitl[ed] defendants to summary judgment as a matter of law." Lake Forest challenges the trial court's reliance on the first breach rule on two grounds: (1) that any breach by Cross was at most a technical breach, not a substantial and material breach as required by the rule, and (2) that any breach by Cross was not "first," but instead was preceded by Defendants' breach of the Notification Provision.

### A. Material Breach

¶25  "[U]nder the first breach rule a party first guilty of a substantial or material breach of contract cannot complain if the other party thereafter refuses to perform. He can neither insist on performance by the other party nor maintain an action against the other party for a subsequent failure to perform." *CCD, LC v. Millsap*, 2005 UT 42, ¶ 29, 116 P.3d 366 (citation and internal quotation marks omitted).

¶26  Only a material breach will excuse further performance by the non-breaching party. *McArthur v. State Farm Mut. Auto. Ins. Co.*, 2012 UT 22, ¶ 28 n.7, 274 P.3d 981. Therefore, "[n]ot every minor failure justifies nonperformance and rescission of the contract." *Saunders v. Sharp*, 840 P.2d 796, 806 (Utah Ct. App. 1992). "'It must be something so substantial that it could be reasonably deemed to vindicate the other's refusal to perform.'" *Id.* (quoting *Zion's Props., Inc. v. Holt*, 538 P.2d 1319, 1321 (Utah 1975)).[3]

---

3. The terms *rescission* and *excuse* are sometimes mistakenly interchanged. *See Sprague v. Boyles Bros. Drilling Co.*, 294 P.2d 689, 693 (Utah 1956). Rescission nullifies the contract, whereas excuse

(continued...)

¶27    "What constitutes so serious a breach as to justify rescission is not easily reduced to precise statement . . . ." *Polyglycoat Corp. v. Holcomb*, 591 P.2d 449, 451 (Utah 1979). But Utah courts have given guidance on what may constitute a material breach. "[C]ertainly a failure of performance which defeats the very object of the contract or [is] of such prime importance that the contract would not have been made if default in that particular had been contemplated is a material failure." *Id.* (citation and internal quotation marks omitted). Furthermore, "[a] breach which goes to only a part of the consideration, is incidental and subordinate to the main purpose of the contract, and may be compensated in damages does not warrant a rescission of the contract . . . . A rescission is not warranted by a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement." *Coalville City v. Lundgren*, 930 P.2d 1206, 1210 (Utah Ct. App. 1997) (citation and internal quotation marks omitted).

¶28    The relevant question is not whether the breach goes to the heart of the provision breached, but whether it goes to the heart of the contract itself. *See* 14 Richard A. Lord, *Williston on Contracts* § 43:6, at 578–80 (4th ed. 2000) ("Generally, such nonperformance will attain this level of materiality only when it goes to the root, heart or essence of the *contract* or is of such a nature as to defeat the object of the parties in making the *contract*, or . . . when the covenant not performed is of such importance that the *contract*

---

3. (...continued)

allows a party to exercise its right to refuse to perform under a continuing contract. *See id.* "[D]ifferent considerations are involved in rescission than in a case which will justify one party in refusing to perform because of breach by the other." *Id.* However, the principle of materiality is relevant to both doctrines. *See* 14 Richard A. Lord, *Williston on Contracts* § 43:6, at 578–80 (4th ed. 2000) (defining materiality in terms of excuse using language similar to that contained in Utah cases discussing rescission); *see also* 26 Richard A. Lord, *Williston on Contracts* § 68:2, at 37–42 (4th ed. 2003) (discussing rescission).

would not have been made without it." (emphasis added)). Therefore, whether a breach is material is a question of degree. *Id.* § 43:6, at 577–78. It turns on a number of factors:

> "(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."

*Cache County v. Beus*, 1999 UT App 134, ¶ 37, 978 P.2d 1043 (quoting Restatement (Second) of Contracts § 241 (1981)); *see also GeoNan Props., LLC v. Park-Ro-She, Inc.*, 2011 UT App 309, ¶ 17 n.6, 263 P.3d 1169.

¶29    "Whether a breach of a contract constitutes a material breach is a question of fact . . . ." *Orlob v. Wasatch Med. Mgmt.*, 2005 UT App 430, ¶ 26, 124 P.3d 269. Therefore, the issue will ordinarily be resolved by the fact finder, and "[s]ummary judgment should be granted with great caution." *Cf. Apache Tank Lines, Inc. v. Cheney*, 706 P.2d 614, 615 (Utah 1985) (discussing the appropriateness of summary judgment on the issue of proximate cause). *See generally* Utah R. Civ. P. 56(c) (stating that summary judgment is to be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."). Summary judgment is appropriate on such factual questions when they fall on either end of a factual continuum: when "there could be no reasonable difference of opinion," or when "the facts are so tenuous, vague, or insufficiently established that determining [the

factual issue] becomes completely speculative." *Harline v. Barker*, 912 P.2d 433, 439 (Utah 1996) (citations and internal quotation marks omitted).

¶30    Here, the trial court concluded that filing the action not under seal constituted a material breach. The trial court also concluded that Cross's disclosures to Lake Forest constituted "a substantial and material breach." However, the trial court appears not to have examined the issue through the lens of the foregoing standards. Without such an analysis, the trial court erred in granting summary judgment on the factual question of material breach.[4]

B. Breach of the Notification Provision

¶31    Lake Forest also contends that any breach by Cross was preceded by a breach by Defendants. Thus, Lake Forest argues, the defense of excuse is unavailable to Defendants. *See Jackson v. Rich*, 499 P.2d 279, 280 (Utah 1972) ("[T]he party first committing a substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure to perform if

4. Lake Forest also contends that Defendants are not entitled to the defense of excuse because the trial court did not rule on a necessary element of that defense: mutual dependence. When one party materially breaches a provision of a contract, the other party's "'subsequent failure to perform'" a specific obligation is excused only "'if the promises are dependent.'" *Jackson v. Rich*, 499 P.2d 279, 280 (Utah 1972) (quoting 17 Am. Jur. 2d *Contracts* § 365); *see also Saunders v. Sharp*, 840 P.2d 796, 806 (Utah Ct. App. 1992); 14 Richard A. Lord, *Williston on Contracts* § 43:1, at 552–53 (4th ed. 2000); *id.* §§ 44:6–44:16, at 92–114. Lake Forest further argues that Defendants' obligation to indemnify Cross could not be dependent on Cross's obligation of confidentiality, because by the very terms of the contract, the Indemnity Provision was excluded from the Confidentiality Provision. We need not reach these arguments given our resolution of the case.

the promises are dependent." (citation and internal quotation marks omitted)).

¶32　The Settlement Agreement obligates Defendants to "notify the plaintiff in the Lake Forest Action" that they "are solely responsible for the resolution" of that matter. The trial court did not rule on whether Defendants breached the Settlement Agreement, and it certainly did not rule on the timing of any alleged breach. On the contrary, it commented on the difficulty of identifying a breach precisely because the timing of the required notification was unspecified.

¶33　Lake Forest contends that the trial court erred in not ruling that Defendants had breached this term of the Settlement Agreement. Defendants respond that they did better than notify the plaintiff in the Lake Forest Action that they were solely responsible for the resolution of that case—they actually resolved it. However, given our resolution of this appeal, we need not address this issue, although the trial court may do so if raised by the parties again on remand.

CONCLUSION

¶34　In sum, Lake Forest has demonstrated as a matter of law that Cross did not breach the Confidentiality Provision of the Settlement Agreement by disclosing the existence of the Indemnity Provision, because that agreement was expressly excluded from the Confidentiality Provision. Lake Forest has also shown that the current record, at least, falls short of showing that Cross breached the Confidentiality Provision by disclosing the existence of the Release Provision. However, Lake Forest has not shown that the trial court erred in ruling that Cross breached the Confidentiality Provision by disclosing that the Settlement Agreement contains confidentiality restrictions or by filing his complaint not under seal. Finally, we agree with Lake Forest that the trial court erred in ruling that Defendants were excused from performance under the

Settlement Agreement because Defendants have not demonstrated that, under correct legal standards, Cross's breaches were material as a matter of law.

¶35    Accordingly, we reverse the grant of summary judgment and remand for further proceedings consistent with this opinion.

————