*This opinion is subject to revision before final publication in the Pacific Reporter*
**2018 UT 61**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

HEALTHBANC INTERNATIONAL, LLC and BERNARD FELDMAN,
*Plaintiffs and Counterclaim Defendants,*

*v.*

SYNERGY WORLDWIDE, INC. and NATURE'S SUNSHINE PRODUCTS, INC.,
*Defendants and Counterclaim Plaintiffs.*

No. 20170591
Filed December 21, 2018

On Certification from the
United States District Court for the District of Utah
The Honorable Jill N. Parrish
Case No. 2:16-cv-00135

Attorneys:

Mitchell A. Stephens, Salt Lake City, Annabella Q. Bonfa, Scott W. Wellman, Laguna Hills, for plaintiffs and counterclaim defendants

Chris Martinez, Kimberly Neville, Salt Lake City, for defendants and counterclaim plaintiffs

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in which JUSTICE HIMONAS, JUSTICE PEARCE, JUSTICE PETERSEN, and JUDGE HAGEN joined.

Having recused himself, CHIEF JUSTICE MATTHEW B. DURRANT does not participate herein; COURT OF APPEALS JUDGE DIANA HAGEN sat.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 This case is before us on certification from the United States District Court for the District of Utah. That court asked us to decide whether the "economic loss rule" in Utah law extends to the tort of fraudulent inducement. This question arises in a case in which the alleged fraudulent inducement overlaps entirely with claims for breach of contract. We therefore reframe the question certified by the federal court. We hold that the economic loss rule applies in the circumstances of this case—there is no fraud exception that applies

where the alleged fraudulent inducement arises out of the very grounds alleged as a basis for a breach of contract action. We stop short, however, of resolving the broad question of whether there may ever be a fraudulent inducement exception to the economic loss rule in Utah. We defer that question to a future case in which the facts may warrant it.

I

¶2    The question presented stems from litigation arising under a royalty agreement. HealthBanc International, LLC ("HealthBanc") sold a "Greens Formula" to Synergy Worldwide Inc. ("Synergy") for use in Synergy's multilevel marketing business.[1] In the royalty agreement HealthBanc assigned its rights in the Greens Formula to Synergy and Synergy agreed to pay HealthBanc a royalty. Synergy specifically requested that the royalty agreement include representations and warranties that HealthBanc owned the Greens Formula and associated intellectual property rights. HealthBanc then made the following representation and warranty:

> HealthBanc hereby represents and warrants that it is the sole and exclusive owner of the entire rights, title and interest, including without limitation all patent, trademark, copyright and other intellectual property rights, in and to the Greens Formula . . . free and clear of all liens, claims or encumbrances.

¶3    The following year HealthBanc sued Synergy for breach of contract. It alleged that Synergy had not paid the required royalty on certain sales. Specifically, HealthBanc asserts that Synergy paid the royalty only on sales in Australia and the United States, and failed to pay the royalty on product sales in other countries.

¶4    Synergy filed a counterclaim asserting that HealthBanc did not own the Greens Formula. On that premise Synergy alleges counterclaims sounding in breach of contract and tort. The breach of contract claim alleges that "HealthBanc has breached [the contract], in which HealthBanc 'represents and warrants that it is the sole and exclusive owner'" of the Greens Formula and all associated intellectual property rights. Synergy's tort claim alleges fraudulent

---

[1] Synergy manufactures, markets, and sells nutritional, skin, and personal care products. The Greens Formula is a health supplement alleged to provide health benefits.

inducement on the ground that HealthBanc misrepresented that it "had the exclusive right to use, assign or sell the Specified Greens Formula and its associated intellectual property rights."

¶5    HealthBanc filed a Motion to Dismiss and a Motion for Partial Summary Judgment as to Synergy's fraud claim. Synergy responded and the court scheduled oral argument. HealthBanc's motion did not assert that the economic loss rule barred Synergy's fraud claim. But the district court issued a minute entry instructing the parties to "be prepared to address whether this court should certify to the Utah Supreme Court the question of whether Utah['s] economic loss rule applies to a fraudulent inducement claim." HealthBanc argued against certification, but the district court disagreed and entered an Order of Certification. We then granted certification.

II

¶6    "[T]raditional standards of review do not apply" to a certified case. *Egbert v. Nissan N. Am.*, 2007 UT 64, ¶ 7, 167 P.3d 1058 (quoting *Robert J. DeBry & Assocs., P.C. v. Qwest Dex, Inc.*, 2006 UT 41, ¶ 11, 144 P.3d 1079). This is because we are not asked "to affirm or reverse a lower court's decision" in such a case. *Id.* And we are not tasked to decide the underlying federal case.[2] *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 2012 UT 66, ¶ 10, 289 P.3d 502. Instead, we aim to "resolve disputed questions of state law in a context and manner useful to the resolution of a pending federal case." *Id.* ¶ 8.

¶7    In so doing we are not required to answer a certified question in the precise form in which it is presented. *See Egbert v. Nissan Motor Co.*, 2010 UT 8 ¶ 13 n.2, 228 P.3d 737 (noting our authority to "reformulate" a certified question). Nor are we foreclosed from considering the facts of the underlying dispute. As we explained in *Horne*: "If facts are necessary to frame a certified question, surely they may also be relevant to our answer. . . . We routinely refer to surrounding facts and circumstances not just to set the stage for our resolution

---

[2] "The resolution of the parties' competing claims and arguments will be up to the federal courts, which of course retain jurisdiction to decide this case under the law as they see it." *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 2012 UT 66, ¶ 10, 289 P.3d 502.

of questions certified by federal courts, but also to illustrate the application of our answer in the context of the case." *Horne*, 2012 UT 66, ¶ 9.[3]

¶8    Here we choose to answer a narrower question than the one certified by the district court. In the context of this case we conclude that we need only decide whether the Utah economic loss rule applies to a fraudulent inducement claim that is duplicative of a breach of contract claim.

¶9    We frame the question in this way in light of the nature of Synergy's counterclaims. Synergy's breach of contract claim alleges that "HealthBanc has breached the [parties' contract], in which HealthBanc 'represents and warrants that it is the sole and exclusive owner of the" Greens Formula and all associated intellectual property rights. And Synergy's fraudulent inducement claim appears to arise out of the same central allegation—the assertion that HealthBanc misrepresented it "had the exclusive right to use, assign, or sell the Specified Greens Formula and its associated intellectual property rights." For this reason this is not a case in which we need to decide whether there could ever be a fraudulent inducement exception to the economic loss rule. We need only decide whether the economic loss rule applies to a fraudulent inducement claim that overlaps completely with a contract claim—in the sense that the alleged fraudulent inducement is also a breach of a warranty in the contract.

¶10    And we hold it does. In cases like this one, where the party's tort claim is a mere duplication of its breach of contract claim, there is no exception to the economic loss rule. The tort claim is barred. We do not foreclose the possibility that in a future case a limited exception for fraud in the inducement may be warranted. But we decline to create such an exception on these facts.

¶11    We first identify the central grounds for our decision. Then we respond to two of Synergy's central arguments.

---

[3] *See also McArthur v. State Farm Mut. Auto Ins. Co.*, 2012 UT 22, ¶¶ 33–38, 274 P.3d 981 (applying the answer to a certified question to the facts and circumstances of the underlying dispute); *Whitney v. Div. of Juvenile Justice Servs.*, 2012 UT 12, ¶¶ 18–19, 274 P.3d 906 (same).

A

¶12    The economic loss rule has two complementary yet distinct applications. "First, it bars recovery of economic losses in negligence actions unless the plaintiff can show physical damage to other property or bodily injury." *Sunridge Dev. Corp. v. RB&G Eng'g., Inc.*, 2010 UT 6, ¶ 28, 230 P.3d 1000. This branch of the economic loss rule applies when there is no contract between the relevant parties. Second, the economic loss rule applies when a contract exists between the parties. This branch declares that "when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual relationship controls, and parties are not permitted to assert actions in tort." *Reighard v. Yates*, 2012 UT 45, ¶ 20, 285 P.3d 1168 (citation omitted) (internal quotation marks omitted). Synergy seeks to establish a fraudulent inducement exception to this latter application of the economic loss rule.

¶13    We have acknowledged some possible exceptions to the second branch of the economic loss rule. We have even said that "fraud may be an exception to the economic loss rule . . . ." *Grynberg v. Questar Pipeline Co.*, 2003 UT 8, ¶ 48, 70 P.3d 1. But we have not yet established a fraud exception. And we decline to do so here.

¶14    A blanket exception for fraud in the inducement would undermine the central premises of the economic loss rule. Some of those premises were highlighted in our opinion in *Reighard*. There the plaintiffs asserted claims in contract and tort. *Reighard*, 2012 UT 45, ¶¶ 3, 6. And we held that the economic loss rule barred plaintiff's tort-based claims because "[a]ny tort duties" owed to the plaintiffs "overlap[ped] with [defendant's] contract duties to the [plaintiffs]." *Id.* ¶ 25.

¶15    The *Reighard* inquiry asks whether the contract covers the subject of the tort claims—or in other words whether the basis for the plaintiff's tort claims is distinct and separable from the basis for the contract claims. "When a duty exists that does not overlap with those contemplated in contract, the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care . . . ." *Id.* ¶ 21 (citation omitted) (internal quotation marks omitted). When the tort claim and the contract claim overlap, on the other hand—"when [the] conflict [that] arises between parties to a contract [is] regarding the subject matter of that contract"—"the contractual relationship controls, and parties are not permitted to assert actions in tort." *Id.* ¶ 20 (citation omitted).

¶16    *Reighard* did not consider the precise tort at issue in this case—the tort of fraudulent inducement. But the rationale holds

here. To find a blanket exception to the economic loss rule for all fraudulent inducement claims would open the door to tort claims that directly overlap breach of contract claims. This blurring of the line between tort and contract law is precisely what the economic loss rule is designed to prevent. *See Sunridge Dev. Corp.*, 2010 UT 6, ¶ 28 ("The economic loss rule . . . marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care." (citation omitted) (internal quotation marks omitted)). And these considerations sustain our extension of the economic loss rule to a case in which the alleged fraudulent inducement overlaps completely with a claim for breach of contract.

B

¶17   Synergy advances two primary grounds for a contrary conclusion. First, because inducement occurs prior to the execution of a contract, Synergy contends that this kind of tort is necessarily independent of the contract. And second, Synergy asserts tort damages are needed to punish wrongdoers and make wronged parties whole. We find neither argument persuasive.

¶18   Synergy invites us to follow the lead of the Colorado Supreme Court in endorsing its first point. Citing *Van Rees v. Unleaded Software, Inc.*, Synergy asserts that "there is an important distinction between failure to perform the contract itself, and promises that induce a party to enter into a contract in the first place." 373 P.3d 603, 607 (Colo. 2016).

¶19   We disagree. When the subject matter of the inducing promises are later negotiated for and included in the contract, the distinction advanced by Synergy is illusory. As explained by the Third Circuit:

> [I]f "all claims for fraud in the inducement are extraneous or independent of the contract because they occur 'prior to the formation of the contract itself,' . . . every breach of warranty claim would be turned into a tort by a simple affidavit stating, in effect, that the warranty was spoken before it was written." . . . "[W]ritten disclaimers of warranties could be voided after the fact by the same affidavit, so long as the oral representations preceded the contract," thus causing chaos and uncertainty in commercial transactions.

*Werwinksi v. Ford Motor Co.*, 286 F.3d 661, 678 (3d. Cir. 2002) (second alteration in original) (quoting *Rich Prod. Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 977–80 (E.D. Wis. 1999)). Contracts are negotiated first and drafted second. To claim that a promise is independent of a contract simply because it was spoken prior to the formation of a contract would open the door to tort liability for all pre-contractual negotiations that were eventually enshrined in a contract. This exception would swallow the rule. And we decline to endorse such an exception.

¶20 On the second point, Synergy asserts that without a fraudulent inducement exception the law will shield intentional tortfeasors from liability. Again we disagree. Intentional bad acts are insufficient by themselves to justify an exception to the economic loss rule. If the "bad acts" (even intentional ones) are covered by a contract, they remain in the realm of contract law. And contract law remains sufficient to "punish" the breaching party.

¶21 Contract law seems sufficient to make wronged parties whole. When the contract terms contain the grounds for the tort claim, we see no reason to conclude that recovery under contract law is insufficient—"when a party is merely suing to recover the benefit of its contractual bargain, there is no inherent unfairness in limiting that party to a breach-of-contract claim." *Louisburg Bldg. & Dev. Co. v. Albright*, 252 P.3d 597, 622 (Kan. Ct. App. 2011). Wronged parties will still have access to traditional contract damages for breach, including expectation damages. And such parties will also have access to exceptional contract remedies—liquidated damages, rescission, etc.—where applicable. The possibility of liquidated damages seems particularly salient. If the parties to a contract with express warranties are concerned about the insufficiency of expectation damages they can bargain for liquidated damages. And where they fail to do so it seems problematic for a court to make a better contract for them than the one they negotiated—by importing tort remedies into the deal.

¶22 We reject Synergy's arguments on this basis. And we conclude that the economic loss rule applies where a party's tort claims are entirely duplicative of its contract claims.

III

¶23 For the above reasons we hold that the economic loss rule applies to fraudulent inducement claims that overlap completely with a breach of contract claim. In so holding we do not foreclose the possibility of a fraudulent inducement exception in some other circumstance. But we conclude that we need not reach that question

here. We can decide whether and to what extent to define any such exception in a case in which the facts may warrant it.

———————