**2022 UT App 108**

## THE UTAH COURT OF APPEALS

DENISE LARSON AND BROOK LARSON,
Appellants and Cross-appellees,
*v.*
COREY STAUFFER AND NICOLA STAUFFER,
Appellees and Cross-appellants.

Opinion
No. 20190759-CA
Filed September 1, 2022

Second District Court, Ogden Department
The Honorable Jennifer L. Valencia
No. 160905860

Ryan P. Atkinson, Ron W. Haycock Jr., and Scarlet R.
Smith, Attorneys for Appellants and Cross-appellees

Justin D. Heideman and Justin R. Elswick, Attorneys
for Appellees and Cross-appellants

JUSTICE DIANA HAGEN authored this Opinion, in which JUDGES
DAVID N. MORTENSEN and RYAN M. HARRIS concurred.[1]

HAGEN, Justice:

¶1      Whether a party has performed under a contract is
generally a question for the fact finder. Here, however, the district
court granted summary judgment—in favor of Appellees Corey
and Nicola Stauffer and against Appellant Denise Larson—based
on its determination that Denise necessarily failed as a matter of
law to perform under her contract with the Stauffers. We reverse

---

1. Justice Diana Hagen began her work on this case as a judge of
the Utah Court of Appeals. She became a member of the Utah
Supreme Court thereafter and completed her work on the case
sitting by special assignment as authorized by law. *See generally*
Utah R. Jud. Admin. 3-108(4).

because that determination was for the fact finder to make. We also reverse the district court's conclusion that the economic loss rule barred tort claims brought by Denise's husband, Appellant Brook Larson, and remand for further proceedings.

BACKGROUND[2]

¶2    The Larsons and the Stauffers are neighbors who, for several years, have fought over the location of the Larsons' backyard shed. The Stauffers commissioned a land survey in 2014, which revealed that the Larsons' shed rested two feet over the property line. Consequently, the Stauffers brought an ejection action against Denise, requesting that she remove the shed from their property.

¶3    After mediation, Denise and the Stauffers signed a written "Stipulation and Settlement Agreement" (the Settlement). The Settlement contains a release of claims, under which the parties agreed to resolve all claims "assertable by, between, among[,] or against" each other up to the date of signing.

¶4    Denise and the Stauffers also agreed to additional obligations "[a]s further consideration for the . . . release." For instance, they agreed to "rely upon the survey commissioned by the [Stauffers] to determine and confirm the deeded property line" and to "take all necessary steps to ensure the dismissal with prejudice of the" underlying suit—"each party to bear its own costs and fees." Denise also agreed to reimburse the Stauffers for "one half of the cost of the survey."

¶5    This case mainly concerns two additional obligations under the Settlement: the shed and harassment provisions. Under the shed provision, Denise agreed to "remodel her shed in order to remove [it] from the [Stauffers'] property" "[w]ithin six

---

2. "When reviewing a grant of summary judgment, we recite the disputed facts in a light most favorable to the nonmoving party." *Bryant v. State*, 2021 UT App 30, n.2, 484 P.3d 440 (cleaned up).

months." "The parties underst[ood] and agree[d] that" Denise would "need to access and cross over the [Stauffers'] property" to remodel the shed. Accordingly, to "facilitate" the remodel, the Stauffers agreed to "move their fence back from the shed to allow [Denise] access."

¶6 The harassment provision contains several "restraining orders." Relevant here, "[t]he parties [were] mutually restrained from bothering, harassing, annoying, threatening, stalking, or harming the other party." They were also "mutually restrained from disparaging the other party."

¶7 Nearly one month later, the ejection action was dismissed at Denise and the Stauffers' request. To clarify, Denise's husband Brook was not a named party in that action. He is not named in the Settlement, and he did not sign it.

¶8 Six months and one day after the date of signing the Settlement, the Stauffers complained that Denise had yet to remove her shed as required. And three days later (six months plus four days), Denise "scrambled to remove the [s]hed as quickly as possible," forgoing the remodel she had originally anticipated. The Stauffers then argued that several of the shed's "structural poles" remained on their side of the property line, and they demanded that Denise remove them.

¶9 Later that year, the Larsons—Denise *and* Brook—sued the Stauffers for breach of contract. They also raised claims for intentional infliction of emotional distress, negligent infliction of emotional distress, private nuisance, and trespass (requesting punitive damages under a separate cause of action). The gist of the allegations was that the Stauffers had engaged in a pattern of conduct that not only violated the Settlement's harassment provision but also gave rise to tort claims.

¶10 The Stauffers moved for summary judgment. With respect to the breach of contract claim, they argued that it was barred under the first breach rule. In other words, because the Larsons

had failed to remove their shed "within six months" of signing the Settlement, they "lack[ed] all capacity to demand performance" under the harassment provision. As for the tort claims, the Stauffers argued that they arose "out of the very basis of the [Settlement]" and were therefore precluded by the economic loss rule.

¶11 The Larsons responded by arguing that the Stauffers had waived their first breach argument by failing to raise it in their pleadings. *See generally* Utah R. Civ. P. 12(h). They also argued that the Settlement was ambiguous regarding the date the shed had to be removed. But they argued that, in any event, there remained genuine issues of fact regarding whether the four-day delay was a substantial or material breach of the Settlement. As for the tort claims, the Larsons argued that Brook had not been a party to the contract; thus, the economic loss rule was inapplicable, at least insofar as the tort claims belonged to Brook.

¶12 The Stauffers disagreed. And, as to the Larsons' waiver argument, they pointed out that performance by the plaintiff was still "the second element of a prima facie case for breach of contract." Accordingly, even if they had been required to affirmatively raise first breach in the pleadings, the breach of contract claim necessarily failed because Denise could not show that she had performed by removing the shed "within six months" of signing.

¶13 The district court agreed with the Stauffers. As a preliminary matter, the court determined that the Settlement was enforceable against both Denise and Brook—the latter based on language indicating that the release applied to claims previously assertable not just by the named parties, but also by "their respective heirs, legal representatives, and assigns." The Settlement therefore "applie[d] to Brook."

¶14 The court then concluded that the breach of contract claim against the Stauffers for violating the Settlement's harassment provision failed as a matter of law because the Larsons could not

prove that they had performed under the shed provision. It held that the shed provision unambiguously required the Larsons to have removed the shed "within six months" of signing. And because it was undisputed that the shed remained on the Stauffers' property one day after that deadline, the court held that the Larsons had "not perform[ed] under the contract," which necessarily prevented them from "establish[ing] a prima facie case for breach of contract."

¶15     Finally, the court agreed with the Stauffers' argument that the economic loss rule barred Brook's tort claims. "Aside from the fact that the tort claims [did] not appear . . . to be independent from the breach of contract claim," the court added that the Larsons had failed to allege whether the Stauffers had breached "a legally recognized duty under tort law." As the court saw it, "[t]he legal relationship between the parties [was] that of neighbors" and the Larsons needed to have alleged more than just "poor behavior . . . to sustain a legal claim for tortious conduct." Based on this reasoning, the court granted summary judgment to the Stauffers on all claims.

¶16     Following the court's decision, the Stauffers requested attorney fees based on the Settlement's attorney fees provision. Paragraph 6 of the Settlement contains the following language:

> In any action to enforce any of the provisions of this Stipulation, Settlement, Waiver & Release Agreement, the prevailing party shall be entitled to recover his or her costs and attorney's fees thus incurred.

The court denied the Stauffers' request, concluding that the provision allowed a prevailing party to recover attorney fees only if that party had initiated the action. As defendants, the Stauffers were therefore not entitled to attorney fees under the Settlement.

¶17     The parties now cross appeal the district court's decisions.

ISSUES AND STANDARDS OF REVIEW

¶18   The Larsons appeal the district court's decision to grant summary judgment in favor of the Stauffers. "We review a district court's grant of summary judgment for correctness." *Patterson v. State*, 2021 UT 52, ¶ 27, 504 P.3d 92. Summary judgment is appropriate "only when, viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Id.* (cleaned up); *see also* Utah R. Civ. P. 56(a).

¶19   The Stauffers cross appeal, arguing that the court erred in concluding that attorney fees were unavailable to them under the Settlement. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *Express Recovery Services Inc. v. Olson*, 2017 UT App 71, ¶ 5, 397 P.3d 792 (cleaned up).

ANALYSIS

¶20   The Larsons make two arguments on appeal. They argue that the district court erred in determining, as a matter of law, that (1) Denise could not maintain a breach of contract claim against the Stauffers and (2) Brook's tort claims were barred by the economic loss rule. We address these arguments, then turn to the issue of attorney fees raised on cross appeal.

I. Breach of Contract

¶21   With respect to Denise's claim that the Stauffers had breached the Settlement's harassment provision, the district court granted summary judgment on the basis that Denise's failure to remove the shed "within six months" meant that she could not establish the second element of her claim: "performance by the party seeking recovery." *See Daz Mgmt., LLC v. Honnen Equip. Co.*, 2022 UT 15, ¶ 29 n.26, 508 P.3d 84 (cleaned up). The Larsons argue that summary judgment was inappropriate because whether

Denise had substantially performed under the Settlement was a disputed question of fact.[3] We agree.

¶22 Ordinarily, to establish the performance element of a breach of contract claim, a plaintiff need show only that "she has, substantially at least, complied with [the] provisions" of the contract. *Bailey-Allen Co. v. Kurzet*, 876 P.2d 421, 424–25 (Utah Ct. App. 1994) (cleaned up). "Substantial performance exists where there has been no willful departure from the terms of the contract, and no omission in essential points, and the contract has been honestly and faithfully performed in its material and substantial particulars." *Reliance Ins. Co. v. UDOT*, 858 P.2d 1363, 1370 (Utah 1993) (cleaned up), *abrogated on other grounds by Commercial Real Estate Inv., L.C. v. Comcast of Utah II, Inc.*, 2012 UT 49, 285 P.3d 1193. Accordingly, a plaintiff substantially performs where "the only

---

3. The Larsons also challenge the district court's interpretation of the shed provision, arguing that it is at least ambiguous whether the six-month deadline began to run from the date of signing versus the date the Stauffers moved their fence "to facilitate the necessary modifications" to the shed. But the Larsons did not make this argument in the district court, so it is unpreserved. *See State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 ("When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation."). Relatedly, the Larsons argue that the Stauffers' obligation to move their fence was a condition precedent to Denise's performance and that "the condition precedent should have been considered [by the court] in determining the parties' intent for the six-month deadline." But again, the Larsons did not make this argument below. Although they argued that the Stauffers' obligation was a condition precedent and that the Stauffers had delayed moving their fence, the Larsons merely argued that the delay prevented the Stauffers from invoking first breach. Their argument on appeal is new: that, as a matter of contract interpretation, the existence of a condition precedent informs the meaning of "within six months." Therefore, it too is unpreserved. *See id.*

variance from . . . strict and literal performance consists of technical or unimportant omissions or defects." *Id.* (cleaned up).

¶23 As the Larsons point out, whether a party has substantially performed is ordinarily an "issue[] of fact for the fact finder." *See Saunders v. Sharp*, 793 P.2d 927, 931 (Utah Ct. App. 1990). Accordingly, a district court cannot decide this question as a matter of law unless "there could be no reasonable difference of opinion . . . in light of the available evidence." *See Heslop v. Bear River Mutual Ins. Co.*, 2017 UT 5, ¶ 20, 390 P.3d 314 (cleaned up).

¶24 This was not such a case. Although it was undisputed that the shed remained on the Stauffers' property after the six-month deadline, it was still a live question whether Denise had at least substantially performed under the entirety of the Settlement. Denise asserted—and the Stauffers do not dispute—that she complied with the Settlement by paying half the cost of the survey, stipulating to dismissal of the prior action, bearing her own costs and fees, and abiding by the harassment provision herself. In addition, the parties agree that Denise attempted to remove the shed within four days of the six-month deadline, although they dispute whether the "structural poles" remain on the Stauffers' property. Viewing the evidence in the light most favorable to Denise as the non-moving party, we must assume that Denise complied with all other terms of the Settlement and removed the shed entirely from the Stauffers' property six months and four days after the Settlement was signed. The fact finder could determine that a four-day delay is precisely the type of "technical or unimportant . . . defect[]" that substantial performance allows.[4] *See Reliance Ins. Co.*, 858 P.2d at 1370 (cleaned up).

---

4. The parties agree that Denise's performance under the shed provision is relevant to whether she can enforce the harassment provision against the Stauffers. We therefore presume as much and make no determination as to whether the Stauffers'

(continued…)

¶25   In granting summary judgment, the district court effectively "made factual findings on . . . substantial performance that it should not have made." *See iDrive Logistics LLC v. IntegraCore LLC*, 2018 UT App 40, ¶ 51, 424 P.3d 970. Viewing the facts and reasonable inferences in the light most favorable to Denise, a reasonable jury could conclude that Denise substantially complied with her own obligations under the Settlement. Therefore, the court erred in ruling as a matter of law that Denise could not satisfy each element of her breach of contract claim against the Stauffers.

¶26   The Stauffers argue that we should affirm on the original ground they raised below: that Denise's claim is barred by the first breach rule. *See Haik v. Sandy City*, 2011 UT 26, ¶ 10, 254 P.3d 171 ("[W]e may affirm a district court's entry of summary judgment . . . on any legal ground or theory apparent on the record." (cleaned up)). The first breach rule provides that "[w]hen one party materially breaches a provision of a contract, the other party's subsequent failure to perform a specific obligation is excused . . . if the promises are [mutually] dependent." *Cross v. Olsen*, 2013 UT App 135, ¶ 30 n.4, 303 P.3d 1030 (cleaned up). The Stauffers therefore argue that Denise's prior breach of the shed provision excused any subsequent breach of the harassment provision.

¶27   This argument fails for similar reasons. The first breach rule requires a material breach from the first-breaching party. *See id.* And like substantial performance, whether a breach is material is a question for the fact finder. *Id.* ¶ 29 (cleaned up). Therefore,

---

performance was dependent merely on Denise's corresponding part performance under the harassment provision. *See generally* 14 *Williston on Contracts* § 43:8 (4th ed. 2022) (explaining that where the parties' obligations "can be apportioned into corresponding pairs of part performances, . . . a party's performance of its part of a pair has the same effect on the other party's duties to render performance of the agreed equivalent as it would have if only that pair of performances had been promised").

the district court could not determine as a matter of law whether Denise materially breached the Settlement. *See Heslop*, 2017 UT 5, ¶ 20.

¶28 In addition, we are unpersuaded that the Stauffers' performance under the harassment provision was mutually dependent on Denise's obligation to remove the shed. *See Cross*, 2013 UT App 135, ¶ 30 n.4. Per the harassment provision, the parties were "mutually restrained" from engaging in prohibited conduct. Thus, the Stauffers' performance under the harassment provision was mutually dependent on Denise's parallel obligation not to engage in prohibited conduct, not her performance under the shed provision. As a result, the first breach rule does not provide an alternative basis for affirming the district court's ruling. Therefore, we reverse the district court's grant of summary judgment on Denise's breach of contract claim.

## II. Tort Claims

¶29 The district court further determined that Brook's tort claims were barred by the economic loss rule. The Larsons argue that the rule is inapplicable because Brook was not a party to the Settlement. Here, too, we agree with the Larsons.

¶30 The economic loss rule "declares that when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual relationship controls, and parties are not permitted to assert actions in tort." *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 12, 435 P.3d 193 (cleaned up). Thus, the existence of a contract between the parties is a prerequisite to application of the rule.[5]

---

5. Granted, no contract is required under the "complementary yet distinct" branch of the economic loss rule applicable to negligence claims. *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 12, 435 P.3d 193 (explaining that the rule also "bars recovery

(continued…)

¶31 In this case, there was no contract between Brook and the Stauffers. The district court reasoned that the Settlement "applie[d] to Brook" because it provided that the release of claims applied not only to Denise and the Stauffers but to their "respective heirs, legal representatives, and assigns." But whether the release "applie[d] to Brook" and whether Brook was in fact a party to the Settlement are distinct legal conclusions. The mutual release language merely prevented Brook from asserting claims "between, amongst, or against [the Stauffers] and [Denise]" as Denise's heir, legal representative, or assign. It did not make Brook a party entitled to enforce the Settlement in his own right. Consequently, because Brook's tort claims were not "between parties to a contract regarding the subject matter of that contract," the economic loss rule does not bar those claims.[6] *See id.* (cleaned up).

¶32 The district court's decision was guided by its observation that Brook's "tort claims [did] not appear . . . to be independent from the breach of contract claim." The court appears to be relying on the economic loss rule, which provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *KTM Health Care Inc. v. SG Nursing Home, LLC*, 2018 UT App 152, ¶ 70, 436 P.3d 151 (cleaned up). The independent duty principle is simply "a means of measuring the reach of the economic loss rule." *Reighard v. Yates*, 2012 UT 45, ¶ 21, 285 P.3d 1168. In other words, "[w]hen

---

of economic losses in negligence actions unless the plaintiff can show physical damage to other property or bodily injury" (cleaned up)). But the Stauffers do not argue that this branch of the rule applies.

6. The Larsons do not appeal the district court's decision as to Denise's ability to maintain the tort claims against the Stauffers. Unlike Brook, Denise was a party to the Settlement. Therefore, the economic loss rule prevents her from raising tort claims based on a breach of duty contemplated by the Settlement.

a duty exists that does not overlap with those contemplated in a contract, the economic loss rule does not bar a tort claim" based on a breach of that duty. *Id.* (cleaned up).

¶33    But, again, the economic loss rule does not apply because Brook was not a party to the Settlement. Brook's claims are based on well-established duties arising under tort law. *See Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶¶ 55, 57, 116 P.3d 323 (elements of intentional infliction of emotional distress and negligent infliction of emotional distress); *Whaley v. Park City Mun. Corp.*, 2008 UT App 234, ¶ 21, 190 P.3d 1 (private nuisance); *Purkey v. Roberts*, 2012 UT App 241, ¶ 17, 285 P.3d 1242 (trespass). And those duties cannot "overlap with those contemplated [by a] contract" to which Brook was not a party. *See Reighard*, 2012 UT 45, ¶ 21 (cleaned up). Therefore, each of Brook's claims alleges the "breach of a duty that is separate and distinct from any contractual duty" owed by the Stauffers, and the economic loss rule does not preclude him from raising them. *See KTM Health Care*, 2018 UT App 152, ¶ 72.

¶34    Lastly, "[a]side from the fact that the tort claims [did] not appear . . . to be independent from the breach of contract claim," the district court ruled that the Larsons had failed to allege whether the Stauffers had breached "a legally recognized duty under tort law." The court summarized Brook's claims as "generally assert[ing] that the Stauffers have behaved poorly." And given that "the legal relationship between the parties is that of neighbors," the court concluded that Brook needed to "do more than assert poor behavior" by the Stauffers "to sustain a legal claim for tortious conduct." But simply because Brook and the Stauffers are neighbors does not mean that Brook was required to make some heightened showing regarding the Stauffers' conduct. Clearly, neighbors can trespass. *See, e.g., Carter v. Done*, 2012 UT App 72, 276 P.3d 1127. Neighbors can cause a nuisance. *See, e.g., Thompson v. Anderson*, 153 P.2d 665 (Utah 1944). And we imagine that, under the right circumstances, a neighbor's conduct could rise to the level of intentional or negligent infliction of emotional distress.

¶35    Further, the question of whether Brook could prove each of his tort claims was not before the district court. In moving for summary judgment, the Stauffers did not argue that, based on the undisputed facts, Brook could not satisfy any particular element of his claims as a matter of law. Rather, they argued only that those claims were barred by the economic loss rule, which we have held is inapplicable. To the extent that the district court was opining on the merits of Brook's tort claims, such a ruling was premature. Accordingly, we reverse the entry of summary judgment in favor of the Stauffers and remand for trial.

### III. Attorney Fees

¶36    On cross-appeal, the Stauffers challenge the district court's denial of their request for attorney fees for successfully defending the lawsuit. Because we reverse the court's summary judgment ruling, we do not necessarily need to reach the Stauffers' argument. But given that the question of entitlement to attorney fees will inevitably arise in this case, we exercise our discretion to provide guidance on this issue. *See State v. Low*, 2008 UT 58, ¶ 61, 192 P.3d 867.

¶37    The district court denied the Stauffers' request based on the Settlement's attorney fees provision: "In any action to enforce any of the provisions of . . . [the] Settlement, . . . the prevailing party shall be entitled to recover his or her costs and attorney's fees thus incurred." Although the court determined that this case was "an action to enforce the contract," it concluded that attorney fees were available only to "the party seeking enforcement," assuming that they prevailed. And because the Stauffers were merely "[d]efending against the enforcement action," they were not entitled to an award of attorney fees.

¶38    We disagree. The attorney fees provision entitles "the prevailing party" to attorney fees "[i]n any action to enforce" the Settlement—full stop. The provision does not require "the

prevailing party" to have initiated the suit.[7] So, to the extent that either party to the contract prevails on remand, that party would be entitled to an award of attorney fees.

¶39 Moreover, the attorney fees provision is mandatory in nature. It states that "the prevailing party *shall* be entitled to recover his or her costs and attorney's fees." *See Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 27, 367 P.3d 994 (explaining that the term "shall" is mandatory in nature); *see also Skolnick v. Exodus Healthcare Network, PLLC*, 2018 UT App 209, ¶ 18, 437 P.3d 584. Where "the right [to attorney fees] is contractual, the court does not possess the same equitable discretion to deny attorney's fees that it has when fashioning equitable remedies, or applying a statute which allows the discretionary award of such fees." *Cobabe v. Crawford*, 780 P.2d 834, 836 (Utah Ct. App. 1989) (cleaned up). Therefore, if the court determines that either party has prevailed, it must award attorney fees to that party, barring only "extraordinary circumstances." *See id.* at 836 n.3.

CONCLUSION

¶40 The district court erred in granting summary judgment with respect to Denise's breach of contract claim and Brook's tort claims. We reverse and remand for further proceedings consistent with this opinion.

————————

7. Even if the Settlement had limited fees to the party that initiated suit, the reciprocal fee statute would make attorney fees available to both parties. *See* Utah Code Ann. § 78B-5-826 (LexisNexis 2018). In fact, even if the Settlement were ultimately found to be invalid or unenforceable, the statute would still apply because the contract would have allowed "at least one party to recover fees in the hypothetical alternative scenario in which the opposing party prevailed." *See Hooban v. Unicity Int'l, Inc.*, 2012 UT 40, ¶ 29, 285 P.3d 766.